SAMUEL C. ALLEN v. GEORGE W. LUCAS, ALBERT H. LUCAS, a Minor, by his Guardian *ad litem,* J. J. DUNNE, and THOMAS R. LUCAS, JR., LYDIA C. LUCAS, JR., and NORMAN W. LUCAS, by their Guardian *ad litem,* E. M. WATSON.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 30, 1903.     DECIDED JUNE 3, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A mortgagee has sufficient title or interest after default by the mortgagor to enable him to bring a statutory action to quiet title against third parties.

A court of law cannot, in the absence of statute, allow fees, in the nature of counsel fees, to guardians ad litem to be paid by the opposite parties.

OPINION OF THE COURT BY FREAR, C.J.

(Galbraith, J., dissenting.)

This is a statutory action to quiet title. It is brought by a mortgagee after default of the mortgagors, against certain other persons, who, it is alleged, claim an estate or interest in the mortgaged land. On demurrer, the Circuit Court ordered the complaint dismissed and plaintiff to pay costs including a fee of $75 to one of the guardians ad litem and of $50 to the other, to which order the plaintiff excepted and now brings the case here by writ of error.

Two points are raised. The principal one is that a mortgagee has not such title or interest as to enable him to bring an action of this kind. The statute, which is set out in full in *Mossman v. Dole,* 14 Haw. 368, provides that actions of this nature may be brought "by any person." This is in terms about as broad as it can be. Doubtless as held elsewhere a mere stranger could not bring the action, notwithstanding the breadth of the language used. The complainant would have to be a party in interest. Whether an equitable interest alone would be sufficient we need not say. It seems to us that a mortgagee, after default, has a sufficient legal interest as against others than the mortgagor.

There are two leading theories of mortgages. One is the common law theory which regards the mortgage as what it purports to be—a deed defeasible upon the performance of a condition subsequent. The title passes to the mortgagee. He is entitled to possession, and may recover it in ejectment, in the absence of an agreement to the contrary, even before default by the mortgagor. After default his title becomes absolute at law, and the mortgagor cannot even redeem. But equity after some centuries stepped in and permitted the mortgagor to redeem. This interference by equity has been developed, chiefly by statute, into what is known as the equitable theory, now recognized at law as well as in equity in many jurisdictions, which regards the mortgage as what it is really intended to be

—a mere security for a debt. The title remains in the mort-gagor and he is entitled to possession even after default, and until foreclosure, in the absence of an agreement to the contrary, the mortgagee having merely a lien. These two theories have many features in common notwithstanding these and other points of difference. The common law theory still holds for the most part in England and most of the eastern states, that is, the older states, while the new theory obtains in most of the western states—as a result to some extent of the adoption of codes taken largely from the code of New York where this theory originated. In some states these two systems are blended to a greater or less extent. For instance, in several the mort-gagor is entitled to possession before default and the mortgagee after default. In several the mortgagee is regarded as having the legal title for some purposes and not for other purposes. The idea of the courts which blend the two theories seems to be that the mortgagee's title or interest should be held sufficiently extensive to protect his rights and sufficiently limited to pro-tect the morgagor's rights. See in general Jones, Mtgs., Sec. 11 *et seq.;* 2 Wash., R. P., 6th Ed., Sec. 1041, *et seq.* No one theory is entirely consistent in all respects. This would naturally be so where the unusual course is adopted of allowing the actual intention to override the expressed intention.

"Just what the theory of mortgages is here has never, that we are aware of, been judicially determined." *Malani v. Alapai,* 13 Haw. 194. *Hardy v. Ruggles,* 1 Haw. 457, is cited as tending to show the adoption of the equitable theory here, but the court merely held that within the meaning of the registry statute, construing that statute as a whole, he legislature in-tended to include mortgages under "pledges." The word "pledges" was held to have been used there in its general as distinguished from its technical sense, and the court said: "We would not urge for a moment that there is not a clear and plain distinction between a pledge and a mortgage, in a technical sense of those terms." *Campbell v. Kamaiopili,* 3 Haw. 477 (followed in *Kaikainahaole v. Allen,* 14 Haw. 527) is cited

to show that the common law theory has been recognized here. In that case the court held that a mortgagee could proceed by foreclosure after the debt was barred by the statute of limitations, in other words, in substance, that the mortgage was not a mere incident of the debt, saying, among other things, that "a mortgage deed of land conveys to the mortgagee his heirs and assigns, a vested right in the mortgaged land, defeasible only on performance of the condition named in the deed, unless affected by adverse occupancy. * * * * We do not think the act was intended to divest mortgagees of their titles or of their remedies against the land by foreclosure. In *Kanoii v. Kaioipahia,* 11 Haw. 389, the court said: "It will be unnecessary to go into the question of the theory of mortgages in this country with respect to the status or legal rights of the parties thereto," but recognized that the rights of those parties as against each other might be different from their rights as against third parties.

The equitable theory is mostly of statutory origin. There are no statutes here requiring its adoption. There are no Hawaiian judicial precedents requiring its adoption. On the contrary, the precedents, so far as they go, point the other way. There has been no usage here that has gone to the extent of showing that a mortgagee has not sufficient title after default of the mortgagor to enable him to protect himself against third parties. The courts in a number of states which have adopted the equitable theory permit the mortgagee to act as if he had the legal title for some purposes. It may be that the mortgagor here is entitled to possession as against both third parties and the mortgagee until default and even until foreclosure, and yet the mortgagee might consistently be held clothed with sufficient title after default of the mortgagor to protect himself against strangers under our broad statute on quieting title. It would certainly seem just to permit him to clear up the title preparatory to foreclosure, and we know of no reason in law to prevent this. In *Love v. Bryson,* 57 Ark. 589 (22 S. W. 341) the mortgagee was held to have sufficient "legal title" to "maintain ejectment or a suit to quiet title preparatory to a sale

under the mortgage." That would be expected, for in Arkansas the common law theory of mortgages prevails. In *Rosenbaum v. Foss*, 4 S. Dak. 184, in a state in which the lien or equitable theory prevails, it was held that a mortgagee could maintain an action to quiet title against one who claimed under a prior mortgage. But the statute there relating to actions to quiet title was worded somewhat differently from ours.

The second point raised relates to the 'fees ordered paid by the plaintiff to the guardians *ad litem* of certain of the defendants. The guardians contend first that this question cannot be raised now for several reasons. (1) Because the order was made after judgment. The record shows that there was but one order for the dismissal of the complaint and the payment of fees. (2) Because the order is not within the "record" as defined in Civ. L., Sec. 1446. That section provides that certain things shall be included in the record for the purposes of the writ of error statute, but does not exclude other things which are necessarily part of the record, such as the judgment or order itself. (3) Because the plaintiff did not move for a retaxation of costs. We do not see that such a motion was necessary. Besides the order was part of the main judgment and was not part of a proceeding for taxation of costs. (4) Because the plaintiff did not except to the portion of the order that related to fees. Whether an exception was necessary, the error appearing on the record, we need not say. See *Cummings v. Iaukea,* 10 Haw. 1. A fair construction of the exception taken makes it cover the entire order, although the order is described in part in the exception as "sustaining the demurrer of the defendants to the complaint filed herein, and dismissing the said complaint." It may be added that the order for costs and fees being merely incidental to the principal order dismissing the complaint would fall with the latter.

As to the merits of the question of fees, a court of law has no authority in the absence of statute to allow fees of this kind, in the nature of counsel fees, against a losing party. Such fees may be allowed as necessary expenses in probate out of the

estates of the minors themselves, and in some jurisdictions, under statutes, by the court trying the action, but not by that court in the absence of statute and against the opposite party.

The writ is allowed, the judgment and order below reversed and the case remanded to the Circuit Court for further proceedings consistent with this opinion.

*W. A. Whiting; Holmes & Stanley; C. F. Clemons,* for plaintiff.

*E. M. Watson; J. J. Dunne,* for defendants.

### DISSENTING OPINION OF GALBRAITH, J.

The language of this statute is not so broad as is claimed. The phrase "any person" used in Section 1773 to indicate who may be plaintiff in the action does not include any one who may cast covetous eyes at a tract of land and who may be able to hire a lawyer and to pay court costs and empower such a person to bring the action to quiet title. The only person who may be defendant in some one who "claims adversely to the plaintiff an estate or interest in real property" and the action may be brought "for the purpose of determining such adverse claim." The "any person" who may be plaintiff in the action must be some person who has an estate or interest in the land otherwise no one could claim "an estate or interest" adversely to him. The general rule both in law and equity requires that the plaintiff in the action to quiet title must hold the legal title.

"Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that little will be exhibited by conveyances, or instruments of record, the construction and effect of which will properly rest with the court." *Holland v. Chollen,* 110 U. S. 15, 25.

"Under that statute," (the statute of Nebraska authorizing actions to quiet title), "as under the general jurisdiction in equity, it is 'the title,' that is to say, the legal title, to real estate, that is to be quieted against claims of adverse estates or interests." *Frost v. Spitley,* 121 U. S. 552, 557; see also— *Chapman v. Jones,* 149 Ind. 434; *Johnson v. McCheney,* 33

Ill. App. 526; *Henry v. Pesoli,* 109 Cal. 58; *Ely v. New Mex. Ect., Railroad Co.,* 129 U. S. 291, 292; *Whitehead v. Shuttuck,* 138 *id.* 146, 156; *Dick v. Foraker,* 155, *id.* 404, 414; *Gillis v. Downey,* 85 Fed. 483, 485.

A good and sufficient reason in law why a mortgagee cannot, prior to foreclosure and sale, maintain the statutory action to quiet title is that he does not hold the legal title to the land.

It is not claimed that there is a statute in this Territory adopting either the common law or the equitable theory of mortgages and defining the title that a mortgage conveys to the mortgagee but it is asserted that there is no "usage" here prohibiting the mortgagee, after default, from protecting his rights against third parties and strangers. This may be admitted without assenting to the proposition that a mortgage conveys to the mortgagee the legal title to the mortgaged premises or that the mortgagee may maintain the statutory action to quiet title prior to foreclosure and sale.

While we have no statute governing this question there is not wanting here judicial development of the law along the lines contended for by the plaintiff; and, it seems to me, that it is only necessary to advance one more step in order to render a statute on the subject entirely superfluous. This step, as I understand it, is taken in the majority opinion, namely, holding in effect that a mortgage conveys to the mortgagee the legal title to the mortgaged premises.

It was declared in *Campbell v. Kamaiopili,* 3 Haw. 477, 478, that the mortgage conveyed to the mortgagee "vested interest in the mortgaged land" and this declaration was quoted with approval in *Kaikainahaole v. Allen,* 14 Haw. 527, 529. There is, however, a wide difference between "a vested interest in land" and the legal title to land. The law of this question ought not in my opinion to be developed further by judicial decisions. If a statute on the subject is desirable the legislature and not the court should make it.

The object of this statute to quiet title was not to try the plaintiff's title but to determine that of some one who was

claiming adversely to him. There is a well established procedure—one confirmed by long usage—that is ample to protect and enforce every right of a mortgagee after default. No satisfactory reason is shown why the plaintiff should not follow this settled procedure instead of experimenting with this statutory action before the title of the land is vested in him.