## UNITED STATES OF AMERICA *v.* A. W. CARTER.

### February 8, 1913.

1. *Census—Schedule—Unauthorized question—Refusal to answer— Penalty:* A refusal to answer a question set forth in a census schedule, which question is not authorized by the statute, does not subject the person so refusing to the statutory penalty provided for such of the designated persons who "shall refuse or willfully neglect to answer" the questions in the schedules.

2. *Tenure—Construction:* The word "tenure" in the phrase "tenure of home," required by the statute (36 Stat., p. 1, s. 8) to be placed in the census schedules relating to population, refers to the manner and upon what terms and conditions the same is held, and not to the strictly technical meaning of the word relating to feudal rights in land.

3. *Same—Mortgage of real estate:* A modern mortgage of real estate is a charge upon the mortgaged property in the nature of a lien,—a mere security for a debt, and as such does not affect the tenure.

*Information* under "An act to provide for the thirteenth and subsequent decennial censuses," approved July 2, 1909, 36 Stat. 1. Plea of "not guilty," and jury waived.

*R. W. Breckons,* U. S. District Attorney, for plaintiff.

*A. A. Wilder (Thompson, Wilder, Watson & Lymer* with him), for defendant.

DOLE, J. The offense charged in the information is that the defendant unlawfully and willfully refused and neglected to answer a certain question asked him by the special agent of the census office of the United States relative to the tenure of his home in April, 1910. The case is submitted on an agreed statement of facts. The defendant submits the following grounds of defense:

1. That the statute does not make it an offense to refuse to answer this particular question.

2. That the statute does not authorize this particular inquiry to be made.

3. That the statute is unconstitutional in so far as it seeks to compel a person to disclose whether his home is mortgaged.

The schedule of subjects upon which information is desired by the government, includes a division entitled "Ownership of Home." This is subdivided into the following parts, upon each of which the proper persons are expected to furnish what information they are able. "Owned or rented. Owned free or mortgaged. Farm or house. Number of farm schedule." Mr. Carter refused to answer the second question, to-wit: "Owned free or mortgaged?" It is admitted that he owned his home at that time.

The provisions of law relating to the issue made by the agreed statement of facts are to be found in "An act to provide for the thirteenth and subsequent decennial censuses," approved July 2, 1909, 36 Stat. 1. Section 8 provides "that the thirteenth census shall be restricted to inquiries relating to population, to agriculture, to manufactures and to mines and quarries. The schedules relating to population shall include for each inhabitant the name (of such inhabitant) . . . and tenure of home."

[2] Although the word "tenure" has a strictly technical meaning relating to feudal rights in land, yet it has come to be used in a more general way as expressing the manner or upon what conditions and terms land may be held (Tiedeman on Real Property, c. 3), and also other kinds of property and even immaterial things, i. e., tenure of office. Undoubtedly Congress used the word in this general sense in the expression "tenure of home," and was so understood by the director of the census, who, in making up the form of the schedule for population, used the words "ownership of home" for the statutory phrase "tenure of home."

[1a] When the defendant answered the first of the above questions, to-wit: "owned or rented," he conformed to the statutory requirement relative to supplying information called for regarding the tenure of his home. He answered that he owned his home. Was he required also to answer the question whether he owned his home free or was it mortgaged? This leads to the consideration of the further question whether a mortgage of real estate enters into and becomes an element of the tenure of the mortgaged property.

[1b] [3] The law of mortgages has generally changed since the time when, under the common law, the mortgagee was entitled, upon default, to take possession of the mortgaged property and hold it to his own use and benefit, even though it may have been worth much more than the mortgage debt. The equity of redemption became established, and equity construed a mortgage to have the effect of a lien, instead of vesting in the mortgagee a defeasible estate in the land. A lien is a charge upon the thing. "A lien is not, strictly speaking, either a *jus in re* or a *jus ad rem;* that is it is not a property in the thing itself, nor does it constitute a right of action for the thing. It more properly constitutes a charge upon the thing." Story's Eq. Jur., 13th ed., sec. 1215; *Conrad v. Atlantic Ins. Co.*, 26 U. S. 292, 335.

In the Oregon case of *Teal v. Walker,* 111 U. S. 242, the issue was whether the mortgagee was entitled to the rents and profits of the mortgaged premises after default of payment and refusal to deliver possession, as agreed in the mortgage, which appears also to have contained a power of sale. The court decided against the contention of the mortgagee, saying on page 251, "The case against the right of the defendant in error to recover in this case the rents and profits received by the owner of the equity of redemption is strengthened by section 323, chapter 4, title 1, General Laws of Oregon, 1843-1872, which declares that 'a mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law.' This provision of the statute cuts up by the roots the doctrine of *Moss v. Gallimore, ubi supra,* (1 Dougl. 279) and gives effect to the view of the American courts of equity that a mortgage is a mere security for debt, and establishes absolutely the rule that the mortgagee is not entitled to the rents and profits until he gets possession under a decree of foreclosure. For if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support." See also *Wood v Toask,* 7 Wisc. 484, 486.

It appears from this decision that it is the opinion of the Supreme Court that the Oregon statute is in harmony with what was already the doctrine of American courts of equity. Another American authority which I am unable to cite, holds that it is not essential to a mortgage of real estate that the instrument should contain the word *heirs* in the habendum clause.

From these considerations it would not appear that the tenure of real property is affected by a modern mortgage. It follows then, that if the question "owned free or mortgaged," is not pertinent to the requirement of the statute that the schedule relating to population shall include the

subject "tenure of home", and there being admittedly no other subject in the statute calling for such a question, it is clear that it is not authorized by the statute; and although section 23 of he act provides a penalty for such of the designated persons as shall refuse and willfully neglect to answer correctly to the best of their knowledge, the questions "on the census schedules" applying to them, it is obvious that a refusal to reply to an unauthorized question, which the director of the census has permitted to appear in the schedule form, cannot subject the one so refusing to punishment.

This sufficiently disposes of all of the points raised by the defense. The defendant is found to be not guilty and is discharged.

---

See, also, *Allen v. Lucas*, 15 Haw. 52, nature of mortgage.