Statement of the Case.
MONROE, J.
All of the heirs of R. T. Noel and his wife, late of the parish of Cad-do, except W. E. Noel, a son, bring tMs suit *939 against the Busch-Everett Company for the recovery of an undivided 23/3 2 interest,. alleged to have been inherited by them from R. T. Noel and wife, in a certain tract of land, in said parish, which the defendant acquired by purchase from W. E. Noel, whom it calls in warranty.
The facts disclosed by the evidence are: That, after the late Civil War, suit was brought against R. T. Noel on account of an ante bellum tutorship, and a judgment was threatened for over $20,000, in order to defeat the execution of which he made simulated transfers of lands owned by him in Caddo parish; as follows: One tract of 800 acres to his son-in-law, R. T. Cole, on August 16, 1873; one tract of 1,680 acres (in which the land here in dispute is included) to Jacob 1-Ioss on August 22, 1873; one tract of 705 acres to Isham M. Booth on August 26, 1873. Jacob Hoss executed a counter letter of even date with the act to which he was a party (and probably the others did likewise), agreeing to convey the property therein referred to to Mrs. Hettie Noel, the wife of R. T. Noel, or to such other person as R. T. Noel should designate, but, though the act was recorded, the counter letter was not. Thereafter, during the year 1873, R. T. Noel died, leaving his widow in the occupancy of the land which had apparently been conveyed to Hoss (being the home place), and with the tutorship litigation still pending. W. E. Noel, who was the eldest son, and who was then living on a place of his own, was induced to move to the home place and take charge of his mother’s affairs, including the pending litigation and other matters affecting the succession of his father, and he testifies that he was to receive $700 a year for his services. Within a year following his removal, the residence on the “home” place burned down, and, as lumber was hard to get, he took down the house which he had built on his own place and used the lumber thus obtained for rebuilding on the home place. Within a few years he succeeded, by his management of the property, in accumulating, over and above expenses, attorneys’ fees, etc., $5,000, which were turned over to his mother, and which she seems to have divided among her children, but which, being returned by them for that purpose, were used in compromising the tutorship claim, then in the form of a judgment. Hoss then expressed a desire to be relieved of the land which stood in his name and wished to execute a deed to Mrs. Hettie L. Noel, but, according to the testimony, she stated that she preferred that the title should be vested in W. E. Noel, to whom she wished her interest to be conveyed, as she expected to live with him for the rest of her life. W. E. Noel was, however, unwilling that the title should be vested in him, save with the consent of all the parties in interest, and that led to an informal partition of the community estate of R. T. Noel and wife among their children, though the widow was still surviving, for on August 13,1873, she and her four children, all majors, executed an instrument in authentic form and duly recorded as follows:
“Be it known that, whereas, R. T. Noel, in the year 1873, made conveyances of certain lands, including the place where he then resided, to Jacob Hoss, * * * to be held by said Hoss in trust for said Noel, and with the understanding that said lands should be held subject to the order of said Noel: and, whereas, it is the desire of said Hoss to transfer and deliver said property to the heirs and legal representatives of said R. T. Noel: Now, therefore, the undersigned heirs (children), and widow, of said R. T. Noel, deceased, hereby authorize and instruct said Hoss to convey, by legal title, said property to William Noel; and we hereby obligate ourselves to hold him harmless for so doing. August 13,-1878.”
The same parties on the same 'day executed two other authentic acts, also duly recorded; the one ratifying and validating the act whereby R. T. Noel had apparently conveyed the 705 acres to Booth, by whom the land *941 was thereafter conveyed to Winston, who conveyed it, without consideration, to Mrs. Bllett, one of the four heirs and one of the-plaintiffs herein, and the other ratifying and validating the act of conveyance to R. T. ■Cole, who seems to be .regarded as having received the property so conveyed for his wife, another of the heirs, whose children are plaintiffs herein. Taylor Noel, the other heir, whose grandchildren are among the plaintiffs, appears to have received his interest in the form of cash; his father having advanced him $5,000 with which he had gone into business in Shreveport.
Including husbands and tutors, there are 17 plaintiffs, but none of them were called to the stand as witnesses, save Mrs. Ellett, and the only other witness in the case was W. E. Noel, the warrantor. The testimony given by them, upon the main issues, is not materially different. Mrs. Ellett having spoken ■of the return by her of $1,000, which her mother had given her, and which she, in common with the other heirs, appears to have brought back, as a contribution to the $5,000 required for the compromise of the tutorship judgment, her examination proceeds as follows:
“Q. At the same time you all signed all these ratifications, and it was to give each' one a good title to the land? A. I suppose so. Q. Don’t you know it, as a fact, that it was to give a good title to the land you had gotten from your father; that is true? A. I reckon so. Q. You never paid anything for your property? A. No, sir. Q. Did Cole pay anything for what he got? A. Not that I know 'of.”
The warrantor was asked:
“Now, Mr. Noel, Mr. Hoss went there to make a deed to you or your mother?”
To which he replied:
“He went there to turn the land back. That is the way of it. He did not want to turn it back to any one except Mother; and Mother says, ‘No, Will has fought this suit, and we owe him;’ and she says, ‘We will settle the whole thing together.’ That is the way it was. We came in and made a settlement that day, among all the balance, and the others got land too.”
It was not, however, until about two years later that the conveyance from 1-Ioss to W. E. Noel was executed and recorded. That instrument, after the granting clause, reads as follows:
“This sale, or reconveyance, is made for the purpose of carrying into effect the contract and agreement made between R. T. Noel (now deceased) and the said Jacob Hoss at the time when said R. T. Noel sold said land to said Hoss, which was to the effect that the property should be held in trust for the heirs of said Hoss (Noel); and to carry into effect the relinquishment of the remaining heirs of R. T. Noel in favor of Wm. E. Noel as per act recorded in conveyance Book X, p. 27. To have and to hold said described property unto said purchaser, his heirs and assigns, forever.”
From July 20, 1880, the date of the instrument thus quoted, W. E. Noel remained in actual, open, peaceable, and undisturbed possession, as owner, of the property in question, until December, 1908, when he sold part of it to the defendant corporation, which enjoyed like possession until the institution of this suit, after the death in 1910 of Mrs. Hettie S. Noel, and after a lapse of more than 30 years from the date of the conveyance to W. E. Noel. The grounds of attack upon which plaintiffs rely may be stated as follows, to wit: That Hoss “relinquished” to W. E. Noel only the simulated title held by him, hence that the real title remained in Noel’s mother and the heirs of his father; that Noel had no capacity and no authority to alienate the interests of his mother or of his coheirs; and that, the interest of the mother having devolved upon her heirs, they are now entitled to recover the 2s/32 of the property here claimed (it being conceded, apparently, that a fraction of one of the subdivisions has been accounted for in some way not explained). For answer, the defendant sets up the title acquired from W. E. Noel and pleads estoppel and prescription and calls its vendor in warranty; and W. E. Noel *943 sets up the title acquired, through Hoss, from his mother and coheirs, pleads estoppel and prescription, alleges that, as to the interest of his coheirs, the conveyance to him was by way of partition and, as to the interest of his mother, by way of compensation for services rendered and as consideration for his obligation, now wholly executed, to maintain her during her life. He also alleges, in the alternative, that, should the court give judgment for plaintiffs, there should be judgment against them with respect to the property acquired by them and in his favor for the value of the improvements placed by him on the land here claimed. On the ease thus presented, there was judgment in the district court rejecting plaintiffs’ demands, and they have appealed.
Opinion.
[1,2] The plaintiff Mrs. Ellett, and the parents of the other plaintiffs, and their mother and grandmother, Mrs. I-Iettie S. Noel, being the sole owners, with W. E. Noel, the warrantor of the defendant, of the property in which plaintiffs are here claiming an interest, and the title to which stood upon the records in the name of Jacob Hoss, the parties first above mentioned, - co-owners with W. E. Noel, deliberately and by authentic act duly recorded, authorized, and instructed Jacob Hoss “to convey, by legal title, said property to William Noel”; and Jacob Hoss, acting under that authority and those instructions, executed an authentic act which was also duly recorded, whereby he conveyed the legal title, as thus authorized and instructed. The act, so executed contains the recital that it was executed- for the purpose of earryihg into effect the agreement whereby Hoss had assumed the title, at the instance of R. T. Noel, “and to carry into effect the relinquishment of the remaining heirs of R. T. Noel, as per act recorded, * * * «; and it concludes with the words, “to have and to hold said described property unto said purchaser, his heirs and assigns, forever.” There is no allegation or suggestion that in so acting the owners of the property were induced by fraud or were laboring under any misapprehension whatever, and they were all sui juris. Since, therefore, they chose to vest the legal title in W. E. Noel and to spread it upon the public records, and since the defendant, acting upon the faith of those records, bought the property from W. E. Noel, whom it found in possession as owner, it is clear that plaintiffs cannot now change the position thus taken and withdraw the assurance thus given by them, or those under whom they claim, to defendant’s prejudice. Beyond that, if the questions presented were to be determined merely between the plaintiffs and the warrantor, the result could not be different, since the evidence is conclusive to the effect that the conveyance to the warrantor was but one of a series of transactions whereby, in accordance with their agreement to that effect, each of the four heirs was to accept and be satisfied, as in case of partition, with what he or she had received or did then receive. That Taylor Noel had received $5,-000 is undisputed; and it is equally undisputed that Mrs. Ellett and Mrs. Cole had received lands which, like the land here in question, had been placed by their father in the names of other persons. And while they, or their children, are demanding the return of the property received, under the same conditions, by W. E. Noel, neither of them has made any offer to return that which he or she has received. As to the interest of the mother, Mrs. Hettie S. Noel, the evidence shows that, for more than 30 years after, like King Lear, she had divested herself of her worldly estate for the benefit of her children, she made her home with her son, W. E. Noel, and that he supplied her with 'all she needed or desired. Whatever, therefore, might be said with regard to her right to recover all *945 of the property with which she thus parted, the plaintiffs, who received their share and are not shown, or even alleged, to have given any consideration whatever therefor, would have no standing to recover, after her death, from the one who, during the long period mentioned, gave the consideration, which has been stated, for the share received by him, for if she during that period remained satisfied with the arrangement that she had made and died without complaining of it, they have no just cause of complaint after her death.
The judgment appealed from is accordingly affirmed.