PACIFIC TRUST COMPANY, LIMITED, *v.* MATAJI NAGAMORI, EXECUTOR UNDER THE WILL OF TSUNEJIRO NAKAMURA, HIROMU NAKAMURA, A MINOR, TADASHI NAKAMURA, A MINOR, MIKIE NAKAMURA, A MINOR, AND ISHI NAKAMURA.

No. 2036.

ARGUED DECEMBER 21, 1931.       DECIDED MARCH 16, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

(Parsons, J., concurring in part and dissenting in part.)

This is an action at law brought under the statute to quiet the title to real estate, the plaintiff claiming as

mortgagee, after default. The undisputed facts are as follows: in pursuance of an oral agreement entered into on June 20, 1922, between Bunjiro Mizushima and Tsunejiro Nakamura and executed, to a certain extent, on September 21 of the same year, these two parties bought an undivided seven-eighths interest in a parcel of land, taking the deed in the name of Mizushima as sole grantee. On November 18, 1922, Mizushima and his wife, and also Nakamura, executed and acknowledged an agreement declaring in effect that while the deed had been taken in the name of Mizushima alone, nevertheless both Mizushima and Nakamura had certain interests in the land which were in the instrument set forth. This agreement was placed on record in the office of the registrar of conveyances on August 31, 1926, and not earlier. On August 27, 1926, the plaintiff loaned to Mizushima the sum of $45,000, taking as security a mortgage on the same land. Nakamura died on November 9, 1924. The mortgage was not executed either by Nakamura or by his successors in interest. The mortgage was recorded on September 1, 1926, one day after the recording of the agreement. This action was commenced on May 29, 1929. Mizushima died November 16, 1929. Nakamura left a will naming as devisees the three minor defendants and Ishi Nakamura, who apparently is not a minor, all four being his children. The circuit court, after trial, entered judgment that "plaintiff's complaint be and the same hereby is dismissed." The case comes to this court by writ of error.

One of the contentions of the defendants is that the judgment must be affirmed because the plaintiff did not prove that at the date of the mortgage the title to the land was in Mizushima. The defendants' sole claim of title, however, was under Mizushima, that is, that they held as beneficiaries under a trust of which Mizushima

was the trustee, the trust being that declared in the agreement above referred to. In other words, both parties to the action claimed title from the same source and therefore it was unnecessary for the plaintiff to prove Mizushima's title.

The two main issues argued by the parties are whether the priority in registration gave the defendants a title under the agreement superior to that of the plaintiff under the mortgage and, secondly, whether the defendants are estopped by reason of their conduct or that of their predecessor Nakamura, or both, to set up the priority of registration. Section 3168, R. L. 1925, reads as follows: "Every conveyance or other instrument, acknowledged or proved, and certified in the manner hereinbefore prescribed, by any of the officers before named, may be read in evidence without further proof thereof, and shall be entitled to be recorded." Section 3170, *Ib.,* reads as follows: "All deeds, leases for a term of more than one year, or other conveyances of real estate within the Territory, shall be recorded in the office of the registrar of conveyances, and every such conveyance not so recorded shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, not having actual notice of the conveyance, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." Under section 3168 the written agreement between Mizushima and Nakamura was entitled to be recorded. It was in its essence a declaration by Mizushima that while the earlier deed had been taken in his name only, nevertheless, the truth was that he held the title for Nakamura and himself as joint owners and adventurers. It stated the nature and the terms of that co-ownership and showed that the two were owners in shares proportionate to the amounts which each had contributed towards the purchase price,—with the qualifica-

tion that the fractions might be altered by subsequent changes in the amounts of their respective contributions. It showed also that the outstanding one-eighth interest was to be purchased, if possible, with the·funds of the two, and that if purchased it was to be merged into the common property upon the same terms as the seven-eighths. Other terms of the arrangement were specified. Instruments of this general nature have always been regarded in this jurisdiction as entitled to be recorded. They are the equivalent of conveyances of interests in land.

It is inexact to say, as has been repeatedly stated in argument by counsel for the defendants, that the purpose of section 3170 was to protect subsequent purchasers who purchased in good faith, for a valuable consideration and without actual notice of an earlier conveyance. That is only a part of the truth. The purpose of that section was to protect subsequent purchasers who not only purchased in good faith for a valuable consideration and without actual notice, but who in addition recorded their convey-ances first. The language of the section seems to us to be unambiguous. The intent of the legislature is clear. To disregard the phrase "whose conveyance shall be first duly recorded" would be to thwart the intent of the legislature. The wisdom of the policy thereby enunciated is something that was solely for the legislature to deter-mine. There is much to be said in its favor, that may have actuated the legislature. Recognizing that an earlier grantee may have been slow to record his deed, it may well have been deemed just, nevertheless, to give notice, as every law is notice, that if a subsequent grantee wished to prevail he should examine the records up to the moment of the acceptance of his deed and place it on record before the earlier grantee should place his on record. There is no real injustice in this requirement. To observe it has been found easily feasible in practice.

A search of the record of the title of one who wishes to borrow on mortgage disclosing at the time of the application that there are no adverse encumbrances, the mortgage may be drawn and executed, but not delivered or accepted unless and until an additional search of the short intervening period shall disclose that in that interim no encumbrances have been recorded. That is familiar practice. The plaintiff in this case apparently did not take these precautions and delayed five days in placing his mortgage of record. The defendants' declaration of trust had been placed of record the day before and under the statute took precedence.

Similar statutes have been similarly construed in other jurisdictions. In Wisconsin the provision of the statute was: "Every conveyance of real estate * * * which shall not be recorded * * * shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall first be duly recorded." Quoting from the statutes of Massachusetts and Vermont, the supreme court of Wisconsin said: "Now the great and remarkable difference between our statute and the statutes of those states, and which, as it seems to me, must lead to a difference of construction, arises from the employment of and the effect which must be given to the words which I have above put in italics, namely, 'whose conveyance shall first be duly recorded?' This is a condition not found in them, but super-added in ours, and which must be complied with by the subsequent purchaser in good faith and for a valuable consideration, before he can claim the benefit and protection of the statute. Without the deed to such a subsequent purchaser *first upon record,* the title under the prior unregistered deed must still be preferred. Under the statutes of the states to which reference has been made, this is not so. It is

enough there that the subsequent purchaser for a valuable consideration and without actual notice, looks upon the record at the time of purchase and finds no conveyance from his grantor then recorded. He is not required to put his deed first upon record in order to be protected as against *prior* conveyances from his grantor, but only to do so in order to protect himself against *subsequent bona fide* purchasers for value, from the same grantor or in the line of recorded conveyances from him. Accordingly in those states the courts hold that if A. conveys to B., a *bona fide* purchaser of real estate for value who fails to put his deed upon record until after A. conveys the same land to C., a second *bona fide* purchaser for value, and B. then puts his deed on record before C. records his, that the title of C. shall nevertheless prevail as between him and B., because it is the fault of the latter that he did not immediately record his deed, and so the equities are with C. But under our statute this cannot be so, because C. must not only be a subsequent *bona fide* purchaser for value, but must also have had his deed first duly recorded. Both conditions of the statute must be complied with." *Fallass* v. *Pierce,* 30 Wis. 443, 458. In a later case the same court, under the same statute, said: "The bank then was a subsequent purchaser in good faith, within the meaning of the recording act. But, in order to be protected against the prior conveyances or mortgage, it must be something more than a subsequent purchaser in good faith. *Its conveyance must first be duly recorded.* Its conveyance, as we have seen, was the assignment of the mortgage, and it was not recorded till long after the plaintiff's mortgage; hence it is in no way protected." *Butler* v. *Bank,* 94 Wis. 351, 356.

Under a statute containing the same qualification, "whose deeds, mortgages and other instruments shall be

first recorded," the supreme court of Nebraska said: "That the mortgages were valid between the parties thereto from the date of their execution will of course be conceded. And, under the provisions of the section quoted, it is perfectly plain that they were not void as to creditors generally, but only as to creditors whose deeds, mortgages or other instruments should be first recorded." *Bank* v. *Stewart,* 77 N. W. 370, 371. See also *Sheasley* v. *Keens,* 66 N. W. (Neb.) 1010.

"Many recording acts provide that a prior unrecorded instrument shall be void as against subsequent *bona fide* purchasers whose conveyance shall first be duly recorded. So that in order to receive the benefit of the acts a subsequent purchaser must, in addition to being a *bona fide* purchaser, have his deed recorded before a prior unrecorded deed is placed on record." 23 R. C. L. 238, 239.

Concerning the claim of estoppel, there is not the slightest evidence that either Nakamura or any of his successors in interest, the present defendants, were guilty of any act or omission which could possibly be construed as the equivalent of a misrepresentation or of silence when there was a duty to speak,—other than the sole fact that they omitted for about four years, until August 31, 1926, to place their mortgage of record. The legislature must be deemed to have realized that such omissions or delays in recording would occur. It is obvious that the statute (section 3170) was intended to meet just that contingency. The will of the legislature is shown by that section to have been that in spite of any such delay the earlier conveyance would prevail unless the subsequent one was first recorded. To declare that the defendants are estopped, without any misrepresentation or silence on their part when under a duty to speak,—and there was no such duty in this instance—would be to circumvent the express command of the legislature on the subject

330

of priority.

One of the provisions of the agreement of November 18, 1922, was that "neither party shall assign, transfer, sell or in any way encumber his interest, or any part thereof, in said property without first the consent in writing of the other party be given." The defendants contend that because of this provision the mortgage of Mizushima was unauthorized and invalid and that for that reason the judgment below must be sustained. It is true that the mortgage does not bear on its face the written consent of Nakamura's heirs (Nakamura had died before its execution); but there is no evidence tending to show whether the consent was secured by a separate written instrument. Passing by the question whether the burden was on the plaintiff to prove that the written consent was given or on the defendants to prove that it was not given, it is sufficient to say that the provision last quoted from the agreement was an attempt to restrain the owners of interests in the land from aliening the same for an indefinite time in the future, in fact, for all generations. It was expressly provided in the instrument that its terms were binding on the heirs, executors, administrators and permitted assigns of each of the parties. Such an attempted restraint on alienation violates the rule against perpetuities which is law in this jurisdiction (*Fitchie* v. *Brown*, 18 Haw. 52, 69) and is void. *Lucas* v. *Lucas*, 20 Haw. 433, 441; *Winsor* v. *Mills*, 157 Mass. 362.

Since the requirement of the written consent of Nakamura or his devisees was void, Mizushima's mortgage, in the absence of the establishment of any other defense, operated to convey to the plaintiff at least his, Mizushima's, interest in the property, which interest appears from the face of the agreement to be approximately three-fifths,—that is, if there was no subsequent change in the

fractional interests of the two parties and as to the latter no evidence was adduced at the trial.

While the circuit judge was right in his construction of section 3170 and in the disposition which he made of the claim of estoppel, the judgment must, nevertheless, be set aside, because upon the showing made the mortgage was effective as to Mizushima's interest in the land and the plaintiff is entitled to recover *pro tanto*. The statutory action to quiet title was intended as one means of establishing and declaring the interests of the parties in the same land.

The judgment is set aside and a new trial is granted.

C. A. *Gregory* (*Smith & Wild* on the briefs) for plaintiff in error.

W. T. *O'Reilly* (*F. Patterson* with him on the brief) for defendants in error.

OPINION OF PARSONS, J., CONCURRING IN PART
AND DISSENTING IN PART.

I concur with the majority in the opinion that the provision in Exhibit "B," the agreement of November 18, 1922, that "neither party shall assign, transfer, sell or in any way encumber his interest, or any part thereof, in said property without first the consent in writing of the other party be given," in the context recited, is void under authority of *Lucas* v. *Lucas,* 20 Haw. 433, 441, as an attempted restraint on alienation in violation of the rule against perpetuities. I concur also in the conclusion that the judgment be set aside and a new trial granted. I do not, however, concur in the majority's reasoning as to the inapplicability of the rule of estoppel, nor in its conclusion that estoppel is not legally invocable, in view of the registration laws, against any defendant under circumstances shown by the evidence.

In the view herein developed estoppel cannot be suc-

cessfully invoked against the minor defendants Hiromu, Tadashi and Mikie Nakamura, upon the scanty evidence introduced at the trial, though for a reason different from that set forth in the majority opinion. In the same view estoppel can be so invoked against Ishi Nakamura, by privity of estate because of the acts and omissions of his testator, coupled with his own omissions at a time subsequent to said testator's death. Ishi Nakamura was not shown or claimed to be a minor.

As to the acts and omissions of Tsunejiro Nakamura upon which, in connection with other circumstances, it is claimed by the plaintiff estoppel may be predicated, and as to the events which followed, the evidence shows: that by agreement between Tsunejiro Nakamura and Bunjiro Mizushima legal title in the latter's name was acquired September 21, 1922, to the real property described in Exhibit "B;" that the agreement of November 18, 1922, between Tsunejiro Nakamura and Bunjiro Mizushima, reciting among other things the respective contributions of said parties to the purchase price of said property, was not placed on record during the lifetime of Tsunejiro Nakamura; that thereafter, with either the actual or constructive knowledge of Tsunejiro Nakamura, Bunjiro Mizushima executed in his own name the following instruments with respect to said property or a part thereof: (a) a mortgage on the same to the First American Savings & Trust Company of Hawaii, Limited, as set forth in said Exhibit "B;" (b) a recorded agreement of sale to Joseph Ornellas and Mary Ornellas, dated August 4, 1923; and (c) a recorded lease to Lau Tan, dated January 23, 1924. On November 9, 1924, Tsunejiro Nakamura died in Honolulu without, so far as the record discloses, having asserted or given notice of any title in himself adverse to the interests held or conveyed by Bunjiro Mizushima as above set forth. One year, nine months

and eighteen days thereafter, under date of August 27, 1926, the mortgage, Exhibit "A," upon said property was executed by Bunjiro Mizushima as mortgagor to the Pacific Trust Company, Limited, mortgagee, payable three years after date, as security for a loan by the mortgagee to the mortgagor in the sum of $45,000. At the time of said loan and mortgage the agreement (Exhibit "B") was still unrecorded and it is not claimed and there is no testimony that at said time the Pacific Trust Company, Limited, had had actual knowledge of the same. On August 31, 1926, four days after the execution of said mortgage (Exhibit "A"), and nearly four years after the execution of said agreement (Exhibit "B"), said agreement was placed on record in the office of the registrar of conveyances. The mortgage was recorded the following day, to-wit, September 1, 1926.

The trial judge held in part and in effect that the provisions of section 3170, R. L. 1925, are conclusive upon the rights of the parties, and interpreted that section as applied to the facts herein to mean that the prior recordation of the prior agreement gave it effect over the subsequent recordation of the subsequent mortgage—notwithstanding the fact that said agreement was not on record at the time of the loan and the mortgage referred to, and notwithstanding the above recited facts upon which the plaintiff claims an estoppel.

The assignments of error are eighteen in number and are grouped for the purposes of argument. Under them plaintiff advances as its first proposition of law that "defendants are estopped to assert any claim in the property covered by plaintiff's mortgage from Mizushima where defendants clothed Mizushima with the full legal title and complete record ownership for four years and plaintiff, in reliance upon this record title in Mizushima, advanced money to Mizushima and accepted a mortgage

on the said property as security therefor on August 27, 1926, without notice of the claim in the property now made by defendants based upon an agreement executed on November 18, 1922, and not recorded until August 31, 1926."

At the later oral argument of this case on December 21, 1931, in response to the written questions of this court, counsel for the plaintiff disclaimed reliance upon any acts or omissions of the minor devisees to establish the estoppel above referred to, but claimed estoppel on the part of all the defendants by privity of estate with Tsunejiro Nakamura, because of the acts and omissions of the latter.

Whether or not estoppel in any event is operative against the holder of an equitable interest in land under a prior trust agreement and in favor of a subsequent *bona fide* mortgagee for value, without notice, either actual or constructive, of the earlier agreement, where said agreement is recorded after the execution but before the recordation of the mortgage, in view of the above-quoted provisions of our registration laws, is a question which confronts us at the beginning of our inquiry. Uncomplicated by questions of disability through infancy, of estoppel through privity of estate, in the absence of a conflicting statute, it is well settled that a claimant under a prior instrument may be estopped by his conduct. "This estoppel, in both its aspects, representation and silence, received in England its distinctive expression in the well-known case of *Pickard* v. *Sears*." (6 Ad. & E. 469) "* * * In accordance with this case it is now a well-established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full power of disposition over the property, the same being in the latter's *actual* possession, and

innocent third parties are thus led into dealing with such apparent owner, they will be protected. Or where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale. This rule * * * applies to a cestui que trust (not under disability) who allows and encourages the trustee to appear as absolute owner of the trust property, and thereby causes an innocent person to act upon that belief and to change his position; the rights of the latter will have priority over those of the cestui que trust." Bigelow on Estoppel (6th ed.) 604, 607, 608. See also *Thompson* v. *Busch-Everett Co.*, 133 La. 938, 63 So. 474; *Whitt* v. *Kentucky Oil Producing Co.*, 3 S. W. (2d) 786. This rule has been successfully invoked by unsecured creditors. See *Thornley Supply Co.* v. *Madigan,* 154 Atl. (R. I.) 277; *McCormick Harvesting Mach. Co.* v. *Perkins,* 110 N. W. 15. And in the absence of statutory provisions to the contrary it has been applied despite priority of recordation of earlier instruments of conveyance. See *Whitt* v. *Kentucky Oil Producing Co., supra.*

"The recording acts in many, if not in most, of the states, do not require the recording of a *subsequent* instrument." (Italics are mine.) *Hawkins* v. *Stoffers,* 278 Pac. (Wyo.) 76, 77, citing note Ann. Cas. 1912A, pp. 194-200. "Recordation is required for the protection of subsequent purchasers only. To require a subsequent conveyance of title to be recorded in order that a prior

purchaser of the same property may be able to obtain information of its existence would not be in furtherance of the general design of these statutes, which was to protect purchasers from being undone by prior secret conveyances by making the means of obtaining information thereof available to that end. And so it is not necessary to his full protection, *in the absence of statutory provisions so requiring,* that the subsequent purchaser record the instrument under which he claims before the recordation of the conveyance of the prior purchaser." 24 A. & E. Enc. L. 140. (The italics are mine.) See *Swanstrom* v. *Washington Trust Co.,* 41 Wash. 561, 83 Pac. 1112.

Estoppel by conduct being thus invocable against a *cestui que trust* under a prior declaration or agreement, where the rule above quoted is not contrary to the registration or other laws, the question follows: Does section 3170, above quoted, prevent its application, in the above circumstances, in Hawaii? Though the decisions in other jurisdictions are not uniform and many of them are (at least arguably) to the contrary of the view herein expressed, I believe that for reasons hereinafter quoted from *Marling* v. *Milwaukee Realty Co.,* 106 N. W. 844, 845, the question last above propounded should be answered in the negative. It is noted that our statute does not expressly provide that a subsequent conveyance to a *bona fide* purchaser for value and without notice is void as against a prior conveyance of the same property, unrecorded at the time of the subsequent transfer. Statutory interpretation or construction must be invoked to give it that meaning. Among the States having registration provisions in the particulars hereinabove discussed similar to our own are Wyoming and Wisconsin. The provisions above referred to of the Wyoming laws (Comp. Stat. 1920) are as follows: "Each and every deed, mortgage, instrument or conveyance touching any interest in

lands, made and recorded, according to the provisions of law, shall be notice to and take precedence of any subsequent purchaser or purchasers of such land from the time of the delivery of any such instrument at the office of the register of deeds of the county in which the lands described in such instrument are situate, for record." (Sec. 4609.) "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, *whose conveyance shall be first duly recorded.*" (Sec. 4610.) In construing these sections the supreme court of Wyoming, in *Hawkins* v. *Stoffers, supra,* said: "It is a well-known fact that the design of the recording laws is to prevent fraud in transactions by securing certainty and publicity in such dealings, and for that reason purchasers of real estate should have their conveyances seasonably recorded. *Atwood* v. *Bearss,* 47 Mich. 72, 10 N. W. 112. Inasmuch as this is the primary purpose of the recording laws, they should not, if possible, be construed so as to produce fraud, but so as to prevent it, in order to be in harmony with the ultimate and primary intent of the legislature. Counsel for the respondent claim that, even though a subsequent purchaser is a purchaser in good faith and for a valuable consideration, nevertheless the sole criterion as to priority depends upon which of the conveyances shall be first duly recorded, as mentioned in the last sentence of section 4610, *supra.* That sentence is contained in the laws of a number of the states, and is somewhat remarkable. It may well be doubted that the requirement of recording the instrument of purchase of a subsequent purchaser subserves any of the purposes, or at least primary purposes, intended by the legislature. * * * Under section

4609, supra, instruments of conveyance touching interest in land give notice to subsequent purchasers, and take precedence only from the time when the instrument is delivered at the office of the register of deeds for recording." *Hawkins* v. *Stoffers, supra,* was decided by the supreme court of Wyoming in 1929. Two earlier Wisconsin cases, namely, *Falass* v. *Pierce,* 30 Wis. 443, 458 (decided in 1872), and *Butler* v. *Bank,* 94 Wis. 351 (decided in 1896), are cited by the majority in the instant case in support of a view contrary to that expressed as above by the Wyoming court. None of the three cases last above cited deals specifically with the question of estoppel to claim under a prior recordation in the circumstances of this case. A later Wisconsin case does so deal with that question. Said the supreme court of Wisconsin in *Marling* v. *Milwaukee Realty Co., supra* (decided in 1906) : "A moment's reflection must convince one that a prior purchaser may, by failure to record his conveyance, certainly in connection with other facts and circumstances, become estopped to rely on it against one whom he has led to believe and act upon its nonexistence, although he should afterwards get his conveyance on record before the later one. Certainly, if the assignee stood by and declared his nonownership to one about to buy or pay a mortgage to the original mortgagee, he would be estopped afterward to assert his assignment. The question, therefore, is whether such acts, of either omission or commission, are here presented as bring plaintiff within the general doctrines of estoppel. That general doctrine is that he who acts inconsistently with the truth under such circumstances that, as a reasonable person, he ought to anticipate that another is likely to change his position in reliance on such conduct, will be estopped to assert the truth to the injury of such other. Two Rivers Mfg. Co. v. Day, 102 Wis. 328, 78 N. W. 440;

Frels v. Ins. Co., 120 Wis. 590, 597, 98 N. W. 522."

The foregoing rule as applicable to this jurisdiction should be qualified by the statement that "fraud or fraudulent intent is not a necessary element of an estoppel." *Peabody* v. *Damon,* 16 Haw. 447, 452.

Section 3170, in the circumstances recited, and in the opinion herein expressed, being thus no bar to the application of the above quoted rule of estoppel against Tsunejiro Nakamura, may the rule be invoked, as to his acts and omissions, against his devisees? My answer is that in so far as the acts and omissions of Tsunejiro Nakamura constitute an estoppel in the premises they operate against his said successors in interest. The acts and omissions of Tsunejiro Nakamura above referred to are his aiding in the clothing of Bunjiro Mizushima with the indicia of legal ownership of the land above referred to, his permitting, with constructive or other notice as above set forth, the latter to mortgage, lease and contract for the sale of said premises, or portions thereof, as though they were his own, his silence as to his own claim of an equitable interest therein, and his failure during his lifetime to record the instrument evidenced by plaintiff's Exhibit "B." But these acts and omissions in themselves are not sufficient to constitute an estoppel against the present defendants as of August 27, 1926, the day on which the Pacific Trust Company, Limited, loaned Bunjiro Mizushima $45,000 and accepted his mortgage on said property therefor. In making the loan and in taking the mortgage of the last named date, the Pacific Trust Company, Limited, could not legally have relied upon the record title of said land as of November 9, 1924, the date of Tsunejiro Nakamura's death. It was entitled to rely only upon what the record disclosed or failed to disclose on the later date. Registration of the earlier instrument at any time between the two last named dates would have

given constructive notice to the plaintiff of the defendants' equities, and would have prevented the application of the estoppel claimed. Failure of registration during that interval must be charged, if it can be charged to anyone, to the successors in interest of Tsunejiro Nakamura. At least three of those successors were minors during that entire interval. "Cases are not wanting in which it is declared that the doctrine of estoppel in pais has no application whatever to infants. * * * The authorities, on the other hand, are not few or obscure which maintain the proposition that if an infant of years of discretion knowing that he has a right to an estate encourage a purchaser to buy it of another without asserting any claim to it, the purchaser will hold it against the infant." Bigelow on Estoppel (6th ed.) 627. These last named authorities, however, are not applicable to any facts thus far proven in the instant case. I find no authority or reason to conclude that a minor may be estopped in the circumstances of this case because of his mere failure to register the conveyance under which he claims, theretofore executed to his ancestor. This applies to Hiromu, Tadashi and Mikie Nakamura, minors, but it does not apply to Ishi Nakamura, who is not under the disability of infancy so far as the record and transcript disclose.

It is a generally recognized rule that privity of estate applies to estoppel *in pais*. See Bigelow on Estoppel, *supra*, 629, 630, citing the leading case of *Wood* v. *Seely*, 32 N. Y. 105, 116, wherein Denio, chief justice, in delivering judgment said: "Estoppels by record and by deed, as is well known, ran in favor of, and against the privies in estate of the immediate parties to the estoppel, as well as for and against the parties personally; and I see no reason why estoppels *en pais* should not be within the rule, as they clearly are within its principle." If the doctrine is adopted, as I think it should be, that such

estoppels are within the rule, and it is applied to the facts in the instant case, the conclusion follows that the said acts and omissions of Tsunejiro Nakamura are chargeable to his successors in interest; and the acts and omissions of Tsunejiro Nakamura, plus the said omissions of Ishi Nakamura, one of the former's successors in interest not shown to be under disability, are sufficent to work an estoppel against the defendant Ishi Nakamura.

Coming now to a consideration of the decision and judgment of the trial court that the "plaintiff's complaint be * * * dismissed" and to the plaintiff's assignments of error numbers 1 and 2 to said decision and judgment,— from the foregoing discussion it is apparent that the plaintiff has *some* interest in the property, title to which is now sought to be quieted. Upon the showing made the mortgage, in this minority view, is valid against the share of Ishi Nakamura, and according to both majority and minority it is valid against the interest of Bunjiro Mizushima.

The mortgage, therefore, in either view being sufficient to encumber the interest of Bunjiro Mizushima, the court was in error in dismissing plaintiff's complaint. The object of our statutory action to quiet title is thus set forth in section 2757, R. L. 1925: "Action may be brought in any of the circuit courts by any person, against another person, who claims adversely to the plaintiff an estate or interest in real property, *for the purpose of determining such adverse claim.*" Section 2758 provides: "Any person may be made a defendant in the action who has or claims an interest in the property adverse to the plaintiff, or who is a necessary party *to a complete determination or settlement of the question involved therein.*" (The italics in both instances are mine.) From the above quoted sections it is apparent that they contemplate in the proceeding a "complete determination or settlement

of the question involved therein." This is in conformity with what appears to be the general rule. "The decree in an action to quiet title to land operates to determine all claims to interests therein, whatever their form or character, existing at the time the decree is rendered. * * * The object of the decree is an adjudication of the state of the title, and the judgment goes no further." 5 R. C. L. 676, § 49, citing in footnote 10, *Indiana B. & W. Ry. Co.* v. *Allen,* 113 Ind. 308, 15 N. E. 451, 3 A. S. R. 650, and note in 45 A. S. R. 377. "Since the object of the action is to settle finally and determine as between the parties all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to, it follows that if the plaintiff fails to show any legal interest in the property in controversy, and as to which he asserts title, he must fail altogether, and cannot complain of a judgment of nonsuit; but where he shows any legal interest, he is entitled to have that interest declared by the court. The mere fact that a defendant is shown to have some valid interest or estate in the property in controversy does not warrant the denial, by nonsuit or otherwise, of all relief to the plaintiff who has also shown a valid interest therein, since by granting a nonsuit the plaintiff is, in effect, declared to have no legal interest whatever in the property in controversy." *Id.,* 681, citing in footnote 1 *Peterson* v. *Gibbs,* 147 Cal. 1, 81 Pac. 121, 109 A. S. R. 107.

That a mortgagee has sufficient title and interest after default by the mortgagor to enable him to bring a statutory action to quiet title against third parties has been judicially determined in this jurisdiction in the case of *Allen* v. *Lucas,* 15 Haw. 52.

In the circumstances above recited I concur with the majority in the view that the trial judge erred in deciding

and adjudging the case wholly in favor of the defendants. He should have determined the respective interests of all parties in so far as shown by the evidence. As the case for that reason must be remanded and a new trial granted, no opinion is here expressed upon the questions raised upon argument of the assignments of error as to the presumptions of law, in the absence of proof, as to the proper exercise or otherwise by Mizushima of trust powers in the execution of plaintiff's mortgage, and as to other presumptions. Upon a retrial opportunity may, it is conceived, be afforded the parties to cure defects of proof hereinabove referred to by the introduction of evidence, and thus obviate the necessity of reliance upon presumptions alone.