MARIA MALANI *v.* THE KAAHUMANU SOCIETY NO. 3, FLORA WILLIAMS AND ANNIE PETERSON.

No. 2161.

ARGUED FEBRUARY 28, 1935.          DECIDED APRIL 8, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is a statutory action at law to quiet title to .474 acres of land at Laupahoehoe, North Hilo, Hawaii, described by metes and bounds in plaintiff's declaration. Plaintiff avers that she is the owner in fee simple of said land and that the defendants without right claim an estate and interest in the same adverse to that of plaintiff; that the plaintiff is out of possession and that the defendant, The Kaahumanu Society No. 3, is in possession of said property. Plaintiff prays among other things for judgment quieting her title as against the defendants, determining such adverse claim and adjudging that the defendants have no interest in said property. Answers were filed by and on behalf of the defendants Flora Williams and The Kaahumanu Society No. 3, the former denying that the plaintiff was or is seized in fee or otherwise of such property and alleging that at the time of commencement of said action and long prior thereto said Flora Williams was and still is seized in fee simple of said land and the whole thereof.

The land above referred to is further described in said answer as the Hilo one-half of the land described in Land Grant No. 888 to Paapu, said defendant Flora Williams herein claiming the same (1) by devolution and paper title and (2) by adverse possession for the statutory period. Under the first defense it is averred that Paapu, the patentee, conveyed the Hilo half of the said land so granted to him to Ane No. 1, later known as Annie Rickard, by deed

dated March 26, 1883, and recorded in Liber 78 on pages 435, 436; that Annie Rickard thereafter conveyed the same by deed, described by book and page of record, to one of her daughters, namely Maria Ilalaole, and that thereafter Mrs. Lydia McLean, daughter and heir of Mrs. Maria Ilalaole, and Joseph Ilalaole, widower of Maria Ilalaole, deceased, conveyed the same by deed therein described to said defendant Flora Williams. Under the second defense Flora Williams avers "that she and her predecessors and grantors have been in continuous, open, notorious and exclusive occupation and possession of the said described land, holding the same under claim of title in fee simple * * * for more than ten years last past before the commencement of this action, and that more than ten years have elapsed since any right of action accrued to the plaintiff."

The defendant, Kaahumanu Society No. 3, filed as its answer a general denial. Default was entered against the defendant Annie Peterson for her failure to answer or otherwise appear. The case was tried before a jury. Plaintiff introduced as her Exhibit "A" Royal Patent Grant No. 888 to Paapu, dated September 24, 1852, to a tract of land in Laupahoehoe, therein alleged to contain .75 acres more or less, together with testimony of a surveyor that said tract included within its boundaries the parcel described in plaintiff's declaration. The surveyor's map, introduced as defendants' Exhibit 2, shows the land of Grant 888 to be divided by a stone wall, the map containing notations that the portion of said land on the Hamakua side of said stone wall contains an area of .236 acres and the portion on the Hilo side thereof an area of .474 acres. The latter area is the parcel described in plaintiff's declaration and of which she therein avers that she is the owner in fee simple. Plaintiff introduced other testimony to the effect that Paapu died leaving one daughter, his on-

ly child, namely, Ane No. 2, who married one Kalawe and had by him five children; that the plaintiff, of the age of thirty-nine or forty years at the time of the trial, is the second of said five children; that at least three of said five children were living at the time of said trial. The evidence is silent as to the dates of the deaths of Paapu and Ane No. 2, and as to the heirs or devisees of any deceased child or children of Ane No. 2. Plaintiff's evidence does not disclose whether or not Ane No. 2 or any one claiming through her was ever in possession of the land in question or ever prior to the institution of this proceeding claimed ownership of the same or of any interest therein. No question was raised at the close of plaintiff's case, by motion of the defendants for a nonsuit or otherwise, as to the sufficiency of plaintiff's evidence of title or as to variance in this respect between the allegations of her declaration and the proof in support thereof.

The defendants sought to prove, first, title by mesne conveyances—connected by legal devolution—from Paapu, and, second, adverse possession as alleged in the answer of Flora Williams above quoted. Under the first defense defendants offered in evidence as their Exhibits 1, 3 and 4, respectively, the deed dated March 26, 1883, from Paapu to Ane No. 1 with translation, the deed dated April 2, 1918, from Annie Rickard to Maria Ilalaole and the deed dated October 15, 1932, from Mrs. Lydia McLean to Mrs. Flora Rickard Williams.

Exhibit 1, which purported to convey half of a piece of land, therein described by patent number only, at Laupahoehoe, Hilo, Hawaii, "on the Hilo side next to government land," bore on its face evidence of alteration as to patent number. A certified copy of the instrument as recorded, introduced in evidence as plaintiff's Exhibit B, showed that the patent number therein, appearing at the time of the record, was 1062 and not 888. Exhibits 3 and 4 con-

tain no separate description of the land therein sought to be conveyed but each for description refers to Exhibit No. 1 by book and page of record. The court properly ruled by instruction number four, given at plaintiff's request, that Exhibit No. 1 does not refer to land conveyed to Paapu by Royal Patent 888—and therefore does not refer to any land to which title is sought to be quieted in this case.

At the hearing in this court defendants abandoned their claim to paper title and announced that they then relied upon their second defense, namely, adverse possession. In support of their claim of adverse possession the defendants introduced testimony to the effect that the stone wall dividing the Hamakua from the Hilo part of Grant No. 888 was erected by Paapu about thirty years theretofore and they offered Exhibits 1, 3 and 4 above referred to, which were admitted, to show color of title in the grantees thereof, in connection with testimony that Paapu and, at that time and later, Ane No. 2 lived in the house erected by Paapu on the Hamakua side of said dividing wall; that Paapu in his said home in the presence and hearing of the witness, Mrs. Ahea Kahale, declared that the land on the Hilo side of said stone wall was Ane No. 1's and that the land on the Hamakua side thereof was Ane No. 2's. There was also testimony that Napua, husband of Maria Napua, built a house on said land on the Hilo side of the stone wall. Defendants' witness, Mrs. Ahea Kahale, was asked on cross-examination: "Q How long ago was that house built?" and answered, "I think from that time until * * * the present time * * * is over 30 years." Quoting from the transcript immediately following the foregoing colloquy: "Q Who lived in this house? A Maria Napua. Q When did Maria Napua live in that house? A I don't remember the year and the month when they lived in this house. Q Did they live there for a long time or just a short time? A A long time. Q One year? A Maybe

more. Q Very much more? Approximately one year or ten years? A I think about ten years. Q Who else lived in that house? A Ilalaole and his wife. Q Did they live there a long time? A Yes, a long time. Q As long as Maria Napua? A No. Q Was this house also vacant a good part of the time?. A My sister and her husband lived there also. Q Who is your sister? A Kuhele Kamoko. Q Was the house unoccupied a good deal of the time? A After that, when my sister and her husband left the place, I don't know. They both came over with me at Papaaloa at the homestead.' Q Were there always people living in that house? A People were always living in that house. My sister and her husband were the last." Quoting from the redirect examination of the same witness: "Q How long did Maria Napua and her husband live in that same house, about how many years? A I believe about 10 years, maybe 20 years. Q Who is Maria Napua, do you know? A She is the daughter of Ane 1."

Defendants introduced as their Exhibit 5 an instrument entitled "Agreement" executed under date of April 26, 1910, by Annie Rickard (identified by the evidence as Ane No. 1) and H. S. Rickard, her husband, conveying to Kaahumanu Society No. 3, the "privilege * * * to freely use a portion of their property, situated at Laupahoehoe, * * * better known in Grant No. 888: Dimensions being as follows:" (then follows a description of an area said to contain 2072 square feet) "and to erect a building thereon for the sole use and benefit of the said Kaahumanu Society No. 3, to be known hereafter as the Kaahumanu Society Hall of Laupahoehoe. And in case the said Kaahumanu Society No. 3 ceased its existence * * * then the property shall be forfeited to said parties of the first part." There was testimony that the Kaahumanu hall was thereafter built on the land last above described, which is on the Hilo side of the stone wall divid-

ing the land of Grant No. 888 as above set forth, and that the building has been in the use and occupation of the Kaahumanu Society for more than twenty years last past. There was further testimony that Ane No. 1 and Ane No. 2 were both members of Kaahumanu Society No. 3; that both attended the meetings of said society when the subject of building said hall was discussed by its members and that no objection thereto and no claim to the land upon which said hall was to be erected were ever made by Ane No. 2.

Verdict and judgment were for the defendants generally. The case is before us upon plaintiff's bill of thirty-two exceptions. For the purpose of argument these are grouped under eight specifications of exceptions in plaintiff's opening brief. The first specification is that "the jury's verdict was not sustained by the evidence because of the failure of the defendants to prove open, notorious, hostile, exclusive and continuous possession under a claim of right and color of title for ten years." The exceptions last above referred to are not well taken so far as they refer to the area occupied as above set forth by Kaahumanu Society No. 3, which area is said to comprise less than one-tenth of the total area of the land, title to which is sought to be quieted. The Kaahumanu Society's muniment of title (defendants' Exhibit 5 above quoted), under color of which defendants claim interest in the land therein described, was executed in 1910; and proof of open, notorious, hostile, exclusive and continuous possession of said premises by said society ever since the time last above named is uncontradicted by any other evidence and is conclusive. But in the instance last above recited such possession must be construed to be confined to the boundaries described in said instrument and cannot avail either defendant to show adverse possession of land beyond said boundaries. See *Hunnicutt* v. *Peyton,* 102 U. S. 333;

*Bell* v. *N. Am. Coal & Coke Co.*, 155 Fed. 712, 714; *Magoon* v. *Pioneer Mill Co.*, 17 Haw. 159, 161.

As to defendant Flora Williams's claim of adverse possession by herself and her grantors and predecessors in interest to the portion of the land of Grant 888 lying on the Hilo side of the dividing stone wall, erected as hereinbefore recited by Paapu and lying without the boundaries set forth in the instrument executed to Kaahumanu Society and admitted as defendants' Exhibit 5, it is noted that the evidence is not complete and that it is not sufficient to support a verdict for the defendants of title by adverse possession, in that it fails to show that possession by the defendants or their predecessors in interest, or both, was exclusive or continuous for the statutory period or that the possession of former occupants, relied upon by the defendant Flora Williams, was under claim or color of title which can in any way avail the said last-named defendant. There is certain evidence not wholly in harmony with the evidence hereinabove quoted that a house stood upon the said Hilo part of said land for about twenty years prior to the erection of the hall of the Kaahumanu Society. There is further evidence that the house, for a period not definitely specified, was occupied by Maria Napua, otherwise known as Maria Baker. The Kaahumanu Society hall, as above recited, was erected after April 26, 1910. That would fix the date of the erection of the house last above referred to at about 1890 and of its occupancy by Maria Napua at some time between 1890 and 1910. But there is no evidence to show that the holder of the record title, Paapu, was not living in 1890, and there is a certain amount of evidence, to wit, the addenda to Paapu's altered deed of 1883 (defendants' Exhibit 1), to show that he was living as late as July 26, 1897. There is no evidence to show that the alteration

in the description of the land in defendants' Exhibit 1, from Grant No. 1062 to Grant No. 888, was made at any time prior to July 26, 1897, or that at any time before said last-named date it formed the basis of any claim of title or color of title or right of possession on the part of Ane No. 1. Ane No. 1 purported to convey the land described in said Exhibit No. 1 to Maria Ilalaole under deed dated April 2, 1918. The evidence does not show how the erection of the house on said premises or the occupancy of the same by Maria Napua, prior to 1910, can in any way inure to the benefit of the defendants herein. Ane No. 1 was not shown to have been in possession of said land (except constructively of the Kaahumanu lot) at any time. Since the last-named year possession by the defendants, except by the Kaahumanu Society as above set forth, or by any of their predecessors in interest, has not been shown. Upon cross-examination of one of defendants' witnesses it was testified that, at times and for periods not named, horses belonging variously to the plaintiff, to Annie Rickard and to the defendant Flora Williams were pastured upon said land and that disputes arose between the parties as to said pasturage, but defendants expressly disclaimed reliance upon any such pasturage as an act showing adverse possession.

Assuming but not deciding that a deed containing a description, altered after execution and recordation of the deed, of the premises purporting to have been conveyed, may be admitted to show color of title in support of a claim of right to adverse possession, said deed would not be available to show color of title at any time prior to the date of the alteration in said description, and it would not be available for that purpose in any event unless possession under it of the land therein described were shown in the grantee or her privies in interest. No possession by Ane

No. 1 and no interest on the part of Maria Napua or of other occupants prior to 1910, at the time of their possession, were shown to support its introduction. The defendants' Exhibits 3 and 4 are dated April 2, 1918, and October 15, 1932, respectively. No adverse possession on the part of the grantees or their successors has been shown since either of those dates. There is no evidence therefore to support the introduction of Exhibit 1, 3 or 4 upon the theory that it shows color of title.

Questions as to the sufficiency or insufficiency of said instruments, for the purposes named, were raised at the trial by objections and motions to strike, which were overruled by the court, and exceptions to said rulings were noted and allowed. Instruction number four, given at the request of the defendants, required the jury to return a verdict for the defendants if it should find that the defendant Flora Williams and her grantors had for a period of more than ten years preceding the commencement of the suit been in actual, continued, visible, notorious, distinct and hostile possession of the land in question. The evidence as above set forth was insufficient to support said instruction. The trial court's error in giving instruction number four above referred to is properly presented by plaintiff's exception number nine.

No question as to the sufficiency or insufficiency of plaintiff's testimony of heirship to an undetermined, undivided interest in said premises to support her averment of ownership in fee has been presented by the record before us or by argument in this court and no such question is now decided.

The errors above pointed out require a reversal and the granting of a new trial, at which new trial opportunity for a different presentation and a determination of the respective interests of the parties, as contemplated by the

statute, may be afforded. See *Pacific Trust Co.* v. *Nagamori*, 32 Haw. 323, 331.

In the instances above indicated the exceptions are sustained and the case is remanded to the circuit court with direction that a new trial be granted.

*M. L. Carlsmith* (*Carlsmith & Carlsmith* on the briefs) for plaintiff.

*W. H. Beers* (*A. G. Correa* with him on the brief) for defendants.