[Filed April 7, 1885.

## L. FLESCHNER v. ALEX. SUMPTER, GEO. L. HIB-BARD, and J. W. BRAZEE.

CONVEYANCE — ACKNOWLEDGEMENT — REGISTRATION — PRIORITY. — On the 17th day of April, 1880, the defendant S. executed and duly acknowledged in this State, a mortgage to the plaintiff of the premises in controversy. On the 15th day of June following, in Idaho Territory, the wife of the grantor signed the same mortgage, and acknowledged it before a clerk of a District Court of said Territory, and at the same time and place the same parties executed a deed of said premises to the defendants H. and B., and acknowledged it before the same officer. Neither instrument was accompanied by a certificate from the proper officer that it was executed and acknowledged in accordance with the laws of said Territory. Both were filed for record at the same time. *Held*, (1) That the due acknowledgement of said mortgage by the husband, entitled it to record without regard to the mode of execution by the wife. (2) That said deed was not entitled to record for want of the certificate aforesaid. (3) That where neither of two conveyances is recorded within five days from the time of execution as provided in section 26, Misc. Laws, the one thereafter first recorded will take precedence. (4) That under the recording acts of this State, a mortgage stands upon the same footing as an absolute conveyance.

FINN COUNTY. Plaintiff appeals. Reversed and decree ordered foreclosing plaintiff's mortgage.

The facts are stated in the opinion.

*Joseph Simon*, for Appellant.

The deed to Hibbard and Brazee, not having the certificate required, though filed for record, was not entitled to be there, and did not operate as constructive notice. There is no contention that plaintiff had any actual notice or knowledge of this deed. (*Musgrove* v. *Bonser*, 5 Oreg. 313, Jones on Mortgages; § 550.) The mortgage was executed and delivered long prior to the time of the execution of the deed, and both recorded at the same time, and this would give plaintiff a priority over defendants Hibbard and Brazee. (Pomeroy Equity, §§ 591, 678.) Taking the case in its strongest aspect against the plaintiff, the equities of the parties are at least equal, and, therefore, the mortgage and deed having been recorded at the same time, were concurrent liens upon the property, and the proceeds of the sale of the same should be distributed *pro rata*. (*Humphrey* v. *Hayes*,

94 N. Y. 600; *Granger* v. *Crouch*, 86 N. Y. 494; *Collerd* v. *Huson*, 34 N. J. Eq. 38.) When a mortgage is taken to secure a pre-existing debt the mortgagee does not become a purchaser in that sense, which, being without notice of a pre-existing equity, would cause his title to prevail over that of the prior equitable claimant. (*Willard* v. *Ramsburg*, 22 Md. 206; *Wells* v. *Morrow*, 38 Ala. 125; *Cary* v. *White*, 52 N. Y. 138; *Pancost* v. *Duval*, 26 N. J. Eq. 445; *Mingus* v. *Condit*, 23 N. J. Eq. 313; *Dickerson* v. *Tillinghast*, 4 Paige, 215; *Manhattan Co.* v. *Evertson*, 6 Paige, 457; *De Lancey* v. *Stearns*, 66 N. Y. 157; *Metropolitan Bank* v. *Godfrey*, 23 Ill. 606.'

*Raleigh Stott*, for Respondents.

THAYER, J.—This appeal is from a decree of the Circuit Court for the county of Linn, rendered in a suit commenced by the said appellant and C. H. Lewis, as plaintiffs, against Alexander Sumpter, Jr., Lydia Sumpter, George L. Hibbard, and J. W. Brazee, as defendants, to foreclose a mortgage bearing date April 17, 1880, executed by said Alexander and Lydia Sumpter, to said plaintiffs, upon certain real property situated in said county of Linn, to secure two promissory notes given severally to the plaintiff. In the early part of the suit it was ascertained that the note to Mr. Lewis had been paid, and therefore it was dismissed as to him. The defendants Hibbard and Brazee were made parties to the suit as subsequent encumbrancers of the premises described in the mortgage as "the west half of claim No. 68, notification No. 1,394, being a part of sections 21 and 28, in T. 10 south of range 2 west, W. M., situated and lying in Linn County, Oregon, and containing 160 acres more or less." The defendants Hibbard and Brazee, after having demurred to the complaint upon the ground that the land was not sufficiently described in the mortgage, and after the demurrer had been overruled by the Circuit Court, filed an answer denying that said mortgage was executed or delivered until the 22d day of June, 1880; denied that said notes and mortgage had not been paid, and in which answer they alleged that on the 15th day of April, 1880, said Alexander Sumpter was the owner of the

land, and that on that day said defendant, at Portland, entered into a contract for the purchase of it from him; that on the 17th day of April, 1880, said defendants went into possession of said land under said contract, and had ever since held the same as owners thereof; that such possession had been open, notorious, and adverse, and that the plaintiffs had notice thereof prior to the time the mortgage was executed or delivered, and that the defendants had no notice or knowledge of said mortgage until the 22d day of June, 1880, and had paid for the land prior thereto; that said Alexander Sumpter and Lydia Sumpter, who is the wife of said Alexander, conveyed the land to said defendants, who had ever since been the owners thereof in fee. Issue having been taken to the new matter of the answer by a reply duly filed by the plaintiffs, and the said parties having duly made their proofs in the case, the suit came on for hearing before the Circuit Court at the October term thereof, 1884. The service of summons was made upon the defendants Alexander and Lydia Sumpter by publication, and no appearance was entered for them therein. The Circuit Court dismissed the complaint, and entered a decree that the appellant pay the costs, which is the decree appealed from.

It appears from the proofs that the said Sumpter and wife were, at the time of the alleged transaction, residing in Idaho Territory, where they have been residing for a considerable period, and where the said Alexander Sumpter, Jr., had been carrying on business; that he opened an account with the defendants Hibbard and Brazee as early as the 27th day of November, 1879, and from whom he had been purchasing boots and shoes, they being wholesale dealers in those articles at Port- land. The appellants and Mr. Lewis were also wholesale dealers at Portland during the same time, each of whom were interested in separate houses engaged in the mercantile business. It also appears that on the 15th day of April, 1880, and for a few days thereafter, the said Alexander Sumpter was at Portland purchasing supplies to add to his stock in trade; that he was then owing the defendants Hibbard and Brazee a balance of $658.25, and was desirous of purchasing from them more of

their goods, and also during the same time desired to make pur-
chase of bills of goods from the firms of which Fleschner and
Lewis were respectively members; that when he came upon
Hibbard and Brazee he proposed to sell them his land, the
premises in question, and that they, acting through Mr. Hib-
bard, proposed to buy the land. The price asked was $2,060,
and they agreed finally to make the purchase at that price, and
a memorandum was drawn up between them, and other writings
executed of the same date, showing that such purchase was made.
That when said Sumpter called upon the appellant's firm he
proposed to execute a mortgage, to secure the payment of his
accounts, upon the same premises, and that he made purchases
from each of said firms. The amount of the bill purchased
from appellant's firm was $831.25. A mortgage was executed
to secure the payment of each purchase, and of the respective
notes given therefor. The said mortgage was duly acknowledged
by Alexander Sumpter, upon the day it bears date, before
Joseph Simon, a notary public of this State at Portland, and the
appellant claims that it was on that date duly delivered to him,
but that, desirous of having Mrs. Sumpter also sign and acknowl-
edge it, he gave it to Alexander Sumpter to take back with him
to his residence in Idaho for that purpose. It appears that
Sumpter, at the same time, arranged with Messrs. Hibbard and
Brazee to have his wife also execute jointly with him a deed to
them of the premises. It further appears that after said Alex-
ander Sumpter got back to Idaho, he and his wife, Lydia
Sumpter, on the 15th day of June, 1880, executed to the defend-
ants Hibbard and Brazee a deed to said premises, described the
same as in said mortgage, and at the same time the said Lydia
executed the said mortgage, and that both of them acknowledged
the said deed, and the said wife acknowledged said mortgage,
before a clerk of one of the District Courts of said Territory, and
that said Alexander Sumpter forwarded both instruments to the
respective parties to whom they were so executed, by the same
mail; that they thereupon respectively forwarded them by the
same mail to the clerk of the said county of Linn for record;
and that the said clerk informed the respective parties of the

peculiar condition of their affairs relating to the matter, which information was conducted also by the same mail.

It is contended by each of the respective counsel that their claim is superior to the other. The appellant's counsel argues that the defendants Hibbard and Brazee had notice of the appellant's note and mortgage before said Sumpter sold the premises to them. In order to establish this, he proved by Solomon Hirsch, one of the members of the same firm with the appellant, that Hibbard, on the 17th day of November, 1880, admitted to him that Sumpter had told him, before he had agreed to sell him the farm, that he had given the note and mortgage for goods purchased of said firm. Hibbard, however, positively denies that he ever made any such statement; and as I consider it, that leaves the matter the same as though no evidence had been given upon the point. Both witnesses are entitled to the same credit, and the testimony of the latter (Mr. Hibbard) neutralizes that of the former.

The respondents' counsel argues that the claim of his clients is anterior to that of the appellant. He attempts to establish this by claiming that the sale of the premises occurred on the 15th day of April, 1880, and that the mortgage was not executed until a subsequent time; but he cannot maintain it from the testimony. Hibbard testified, it is true, that he purchased the place for his firm, and closed the bargain on or about the 15th day of April, 1880; but Mr. W. R. Bishop testified that on the 16th day of April, 1880, Alexander Sumpter said to him that he had sold to Hibbard a certain tract of land in Linn County, and asked him if he knew the location, and notified him that he would ask him to describe the land to Mr. Hibbard before he left Portland; that the next day Sumpter and Hibbard came to the office of the Brownsville Woolen Mills Company and desired witness to describe the land. This last date is the same as that of the contract of sale, and the other writings before referred to. This testimony, taken in connection with that of Mr. Hibbard, set out in respondents' briefs, shows pretty conclusively that the sale was not completed before the 17th of April. Mr. Hibbard testified upon the point referred to as follows:—

"Sumpter had a farm to sell in Linn County, Oregon. It contained, Sumpter said, 160 acres of land. He proposed to sell our firm that place on or about April 15, 1880; price being $2,060. Not knowing anything about the place, he referred us to Mr. Bishop. He went and called Mr. Bishop's attention to the place."

How can it be consistently claimed, in view of this evidence, that the sale and purchase were made before Mr. Bishop was consulted, when he was referred to by Sumpter as being acquainted with the place and subsequently called upon to describe it? It is not at all probable that Hibbard first bought the land and afterwards sought the information regarding it, which he evidently intended to act upon before making the purchase. The evidence and circumstances show beyond question that the sale was not made prior to the 17th day of April, and that all that had taken place between the parties prior thereto had been negotiation simply. The contract of sale and the mortgage were evidently intended to be and were concurrent acts. Each bears the same date; each was executed upon the same occasion and for the same object, viz., to enable Sumpter to obtain credit. He had come to buy goods; had the land in question, and very probably intended to make such a use of it as would secure the greatest extent of credit. He would certainly not be likely under the circumstances to inform the parties with whom he dealt as to the purposes of his scheme, for that would have frustrated it. It appears, also, from the circumstances, that either through a sense of justice or from policy he intended to leave the parties he traded with equally entitled to the property as purchasers and mortgagees. There evidently was method in his rascality, and he consummated it with adroitness.

The appellant's counsel laid great stress upon the rule of equity that a party cannot claim to be an innocent purchaser of an estate when the consideration of the purchase is past indebtedness. The rule that the rights of a purchaser will not prevail over those of a holder of an outstanding equity unless he has paid value for the property, or parted with some security, does

not apply to this case. Here the rights of the respective parties were created simultaneously. Sumpter was buying goods from all the parties interested in this case at the same time, and attempted to pay and secure them by means of the same property. When the respondents Hibbard and Brazee bargained for the land, the appellant's claim was not outstanding; neither right can be said to have been anterior to the other; consequently the rule which the counsel would invoke will not benefit him. The rights of the parties, viewed wholly from an equitable standpoint, are so nearly equal that human knowledge and intelligence are unable to distinguish any difference in favor of either. Both parties were attempting to secure their just rights, and I am unable to perceive that either attempted to take any undue advantage of the other. And I should most decidedly be in favor of adjudging the land a common fund, to indemnify them both, were it not for one fact in the case which, I think, gives the appellant the better right. The mortgage from Alexander Sumpter to the appellant was properly acknowledged and entitled to record; but the deed from Sumpter and wife to the respondents Hibbard and Brazee was not entitled to record, as there was no certificate from the proper officer to the effect that the clerk of the District Court of Idaho Territory, before whom the acknowledgment was taken, was such clerk, or that the deed was executed in accordance with the laws of that Territory. (§§ 11, 12, Misc. Laws, pp. 516, 517, Gen. Laws Oreg.; *Musgrove* v. *Bonser*, 5 Oreg. 313.) The same may be said of the mortgage, so far as the execution thereof by Lydia Sumpter is concerned. But its execution by Alexander Sumpter, and his acknowledgment thereof, were sufficient to entitle it to record; and as to him, and those claiming under him, it was properly recorded.

The position of the respondents' counsel, that the mortgage, not having been recorded within the five days specified in section 26, Misc. Laws, p. 518, Gen. Laws Oreg., would not give it priority over an unrecorded conveyance, or one recorded subsequently, is untenable. The section last referred to will bear no such construction as that. It provides merely that a conveyance not

recorded within five days after its execution shall be void against any subsequent purchaser in good faith, etc., of the same property; whose conveyance shall be first duly recorded. The prior recording of the prior conveyance at any time after its execution will give it precedence. So will the prior recording of the subsequent conveyance give it precedence over a prior one subsequently recorded, although neither of them be recorded within the five days. A mortgage, under our recording act, stands upon the same footing as an absolute conveyance, and if the mortgagee take it in good faith and for a valuable consideration, the recording of it will give it a preference over a prior unrecorded deed, though the latter should be recorded no more than five minutes thereafter. If a subsequent grantee or mortgagee obtains in such a case a priority over a former one by virtue of the recording act, then, *a fortiori*, should the appellant in this case, where the equities between the parties are equal. The demurrer to the complaint was properly overruled. The description of the premises in the mortgage is capable of being made certain. The term "notification" clearly indicates that the claim there referred to was a donation claim, and it does not appear but that it is shown upon the maps and plats of the United States land office, and can be found in the field from its description in the mortgage. I should infer that it does so appear, and that it could be so found without difficulty.

Under this view the decree appealed from will be reversed, and the appellant entitled to a foreclosure of the mortgage to the extent of Alexander Sumpter's interest in the premises at the date of the said mortgage.

LORD, J., concurring.