Butler vs. Bank of Mazeppa.

BUTLER, Respondent, vs. BANK OF MAZEPPA, imp., Appellant.

*October 17 — November 4, 1896.*

*Mortgages: Priority: Recording: Assignment: "Purchaser:" "Conveyance."*

1. Where a mortgage is simply an extension of a pre-existing purchase-money mortgage, and such fact is known by another mortgagee who voluntarily accepts his mortgage knowing that it was intended to be and was in fact a subsequent lien, the former will be the prior lien, although the mortgages were apparently contemporaneous in execution and the latter was first recorded.

2. An assignee of a mortgage is a "purchaser," and the assignment is a "conveyance," within the meaning of secs. 2241, 2242, R. S. (providing that every conveyance of real estate which shall not be recorded as provided by law shall be void as against any subsequent purchaser in good faith *whose conveyance shall be first duly recorded*); and in order that the assignee's lien may take precedence over another mortgage, which although a prior lien was not first recorded, the assignment must have been recorded prior to the recording of the latter mortgage.

APPEAL from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

This is an action for the foreclosure of a mortgage on real property, and the sole question is whether the plaintiff's mortgage is a prior lien to a mortgage on the same premises held by the defendant bank. The essential facts were shown

to be as follows: In the month of May, 1893, the plaintiff owned a purchase-money mortgage for $3,000, upon the east half of lot 8, and all of lots 9 and 10, in block 60, in the plat of the city of Superior, which was admitted to be a first lien upon the whole premises. During that month, Larson, the mortgagor and owner of the premises, negotiated a sale to McLaughlin of the east half of lot 8 and the west half of lot 9, and applied to the plaintiff's agent to make a change in the securities, offering to give the plaintiff a mortgage of $1,000, to be executed by McLaughlin upon the premises sold to said McLaughlin, and also a new mortgage of $2,000, executed by himself upon the balance of the premises in place of the original $3,000 mortgage, which he desired to have released. To this arrangement the plaintiff's agent consented, provided that a subsequent mortgage then existing upon the whole premises, and owned by the State Bank, should be simultaneously released. On the 3d of June, 1893, Larson brought to the plaintiff's agent the following papers, viz.: A mortgage from McLaughlin on the part sold to him, of $1,000; a mortgage executed by himself and wife for $2,000, upon the balance of the premises, dated and executed June 1, 1893 (and which is the mortgage foreclosed in this action); also, a release of the mortgage of the State Bank, and desired to complete the arrangement. Some defect was found by plaintiff's agent in the execution of the satisfaction of the bank mortgage, and plaintiff's agent drew a new satisfaction, and arranged with Larson that he (Larson) should leave the mortgages with him, and take the new satisfaction piece, and procure its due execution and return; whereupon he (plaintiff's agent) would place both mortgages and the release of the bank mortgage and of the $3,000 mortgage upon record, and thus close the transaction. This was done, and on the morning of the 7th of June, 1893, plaintiff's agent received by mail the satisfaction of the bank mortgage duly executed, and immediately sent all the pa-

pers to the office of the register of deeds, where they were received and recorded at 10 o'clock a. m. of that day.

It does not appear that plaintiff or his agent had any knowledge of the execution of any other mortgage upon any part of the premises. The fact was, however, that, upon the 1st day of June, aforesaid, the same day upon which plaintiff's $2,000 mortgage upon the unsold portion of the premises was executed, Larson executed to H. T. Fowler a mortgage for $1,000 upon the same premises covered by the $2,000 mortgage, dated on the same day; there being nothing in either mortgage to show that either of them was intended to have priority. At the time of the execution of this mortgage, however, Fowler had actual knowledge of plaintiff's purchase-money mortgage of $3,000, and knew that the $2,000 mortgage was in fact but an extension of the time of payment *pro tanto*, and took his mortgage with knowledge that it was intended to be a subsequent lien to the plaintiff's lien. However, Fowler placed his $1,000 mortgage on record on the 7th day of June, 1893, at 9 o'clock a. m., thus securing priority of record for his mortgage of one hour. The plaintiff's agent first learned of the execution and recording of the Fowler mortgage about a week after the recording of the mortgages, and then applied to Fowler to execute some paper acknowledging the priority of the plaintiff's mortgage. Fowler substantially admitted the priority of the plaintiff's mortgage, but failed to execute any paper acknowledging the fact, though intimating that he would arrange it in some way. On the 28th of June, 1893, Fowler sold his note and mortgage of $1,000 (the same not being due) to the defendant the *Bank of Mazeppa* for value, and the assignment was thereafter duly recorded. These facts were proven without dispute, and were, in substance, found by the trial court. The defendant introduced the testimony of the cashier of the defendant bank, to the effect that the bank officers had

no knowledge, when they purchased the $1,000 mortgage, of any prior lien thereon, and purchased believing their mortgage to be the first lien. On cross-examination, however, it appeared that the purchase was made by one F. E. Fowler, at that time cashier of the bank, and that all that the witness knew about the purchase was what Fowler told him afterwards. The court made no finding upon the question of the good faith of the purchase, but, upon the other facts found, held the plaintiff's mortgage to be the prior lien, and rendered the usual judgment of foreclosure and sale. From this judgment the bank appealed.

For the appellant there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *Louis Hanitch*.

For the respondent there was a brief by *Catlin & Butler* and *Carl C. Pope*, and oral argument by *Mr. Pope*.

WINSLOW, J. There can be no doubt but that, as between the plaintiff and Fowler, the plaintiff's mortgage was the prior lien, notwithstanding the fact that they were apparently contemporaneous in execution, and the further fact that Fowler's mortgage was first recorded. This results from the fact that the plaintiff's mortgage was simply an extension *pro tanto* of his previously existing purchase-money mortgage, which fact Fowler knew when he took his mortgage, and voluntarily accepted it with the knowledge that it was intended to be, as it was in fact, a subsequent lien. *Jones v. Parker*, 51 Wis. 218. Such being the situation as between plaintiff and Fowler, the original mortgagees, the question is whether, by reason of any subsequent facts, the relative priority of the two mortgages has been reversed. It appears that, about three weeks after the execution and recording of the two mortgages, the defendant bank purchased the Fowler note and mortgage for value, before due; and we shall assume that the purchase was in good faith, without notice of the plaintiff's priority of lien, although

the sufficiency of the evidence upon that point may be seriously questioned. Upon these facts, in connection with the further fact that the Fowler mortgage was first recorded, the claim of the bank to a prior lien is predicated.

It is not claimed that there are any facts amounting to an estoppel as against plaintiff, nor could such a claim be successfully maintained. He made no representations to induce the purchase by the bank. He put his mortgage on record promptly, in ignorance of the fact that the Fowler mortgage existed; and, when he learned of its existence and its priority of record, he endeavored at once to procure correction of the record, so as to show the true state of the facts. There was no act or omission on his part by which either the bank or Fowler was misled. *Greene v. Warnick,* 64 N. Y. 220.

Nor can the bank claim any better lien than Fowler had by reason of the fact that the note was a negotiable note, and that it was purchased for value before due. The law which protects the *bona fide* purchaser of such paper, before due, from latent defenses or equities, has no application, because there are no such defenses or equities interposed. There is no controversy raised as to the bank's title to the note, its amount, or its right to recover the whole of it. The sole controversy is as to priority of the liens created on the real estate by the mortgages, with which liens the notes have nothing to do, save to measure the amount thereof, and as to the amount there is no dispute. So the question must depend simply upon a construction of the registry law. If the bank has gained priority of lien over the plaintiff's mortgage, it must be by virtue of the law governing the registration of conveyances. This law is contained in secs. 2241 and 2242, R. S. 1878, and provides, in substance, that every conveyance of real estate which shall not be recorded as provided by law shall be void as against any subsequent purchaser thereof in good faith *whose conveyance shall be*

*first duly recorded.* It further provides that the term "conveyance" shall be construed to embrace every written instrument by which any estate or interest in real estate is created, aliened, mortgaged, or *assigned* (with certain exceptions unnecessary to be stated), and that the term "purchaser" shall be construed to embrace every person to whom any estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage or lease or other conditional estate. From a careful perusal of this law, it is very plain that a purchaser of a mortgage is included within the term "purchaser" as used in the law, and that an assignment of a mortgage is included within the term "conveyance." To the same effect are the authorities. *Westbrook v. Gleason,* 79 N. Y. 23; *Brewster v. Carnes,* 103 N. Y. 556. The bank, then, was a subsequent purchaser in good faith, within the meaning of the recording act. But, in order to be protected against a prior conveyance or mortgage, it must be something more than a subsequent purchaser in good faith. *Its conveyance must first be duly recorded.* Its conveyance, as we have seen, was the assignment of the mortgage, and it was not recorded till long after the plaintiff's mortgage; hence it is in no way protected. This was the doctrine finally adopted, after great deliberation and argument, in the case of *Fallass v. Pierce,* 30 Wis. 443. In that case it was said that the subsequent purchaser, in order to be protected under our statute, "must not only be a subsequent *bona fide* purchaser for value, but must also have his deed first duly recorded. Both conditions of the statute must be complied with." *Id.* 458. In that case, also, the doctrine stated in *Ely v. Wilcox,* 20 Wis. 529, to the effect that the registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed, or, in other words, that the statute applies only to successive purchasers from the same vendor, was expressly overruled; — and it was dis-

tinctly held that the statute applies to any and every subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, and is not limited to successive purchasers from the same seller, and that the purchaser must have *his conveyance* first duly recorded in order to take advantage of the terms of the statute. The doctrine of this case has stood unquestioned for nearly a quarter of a century, and it is decisive of the case before us. The bank did not have its conveyance (i. e. its assignment) recorded until long after the plaintiff's mortgage; hence the recording act furnishes it no protection. To the same effect are numerous decisions in New York, under a similar statute. *Decker v. Boice*, 83 N. Y. 215.

*By the Court.*— Judgment affirmed.

MARSHALL, J., took no part.