**In re Russel Keith KOSHAR, Debtor.**

**Thomas R. Tibble, Trustee, Plaintiff,**

**v.**

**Consumers Credit Union, Defendant.**

**Bankruptcy No. HK 04–05159.
Adversary No. 04–88641.**

United States Bankruptcy Court,
W.D. Michigan.

Dec. 2, 2005.

Timothy Hillegonds, Grand Rapids, MI, for Plaintiff.

Gordon C. Miller, Kalamazoo, MI, for Defendant Consumers Credit Union.

Christopher E. Tracy, Kalamazoo, MI, for Defendant Republic Bank.

### OPINION RE: CONSUMER CREDIT UNION'S OCTOBER 25, 2004 MOTION FOR SUMMARY JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

The Chapter 7 Trustee commenced this action against Consumers Credit Union ("CCU") on August 18, 2004. His complaint requests that CCU's mortgage lien

in Debtor's home be avoided as a preferential transfer.[1]

CCU answered the Chapter 7 Trustee's complaint on September 9, 2004 and CCU filed its motion for summary judgment shortly thereafter. The motion was first scheduled for hearing on December 16, 2004. However, the hearing was adjourned first to February 3, 2005, and then again to March 17, 2005. The parties filed briefs and supporting affidavits. They also filed supplementary briefs and a deposition transcript pursuant to my December 23, 2004 scheduling order.[2]

The parties offered argument at both the December 16, 2004 and March 17, 2005 hearings. I took the matter under advisement at the conclusion of the March 17, 2005 hearing.

## STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056. The summary judgment rule requires that the disputed facts be material, that is, facts which are defined by substantive law and are necessary to apply the law. The rule also requires that the dispute be genuine. A dispute is genuine if a reasonable jury could return a judgment for the nonmoving party. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

"Only disputes over the facts that might affect the outcome of the suit under the governing law will preclude the entry of a summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must draw all inferences in a light most favorable to the nonmoving party but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). *Boyd v. Chase Manhattan Mortgage Corp. (In re Kroskie)*, 258 B.R. 676, 678–79 (Bankr.W.D.Mich.2001).

## FACTUAL BACKGROUND

Debtor and his non-filing spouse owned a home in Kalamazoo, Michigan. On February 9, 2004, they granted a lien in their home to CCU. The lien is evidenced by a mortgage of that same date. CCU kept the mortgage so that it could be recorded with the Kalamazoo County register of deeds office.

Mr. Kosak was the CCU loan officer assigned to this account. Mr. Kosak's uncontroverted deposition testimony establishes that he mailed the mortgage to the register of deeds for recording on the

---

1. The Chapter 7 Trustee's complaint requested that a separate mortgage lien claimed by Republic Bank also be avoided. However, that cause of action has been severed from this adversary proceeding. The Chapter 7 Trustee is currently pursuing his claim against Republic Bank under a separate adversary proceeding captioned *Thomas R. Tibble, Trustee v. Republic Bank*, Adv. Pro. No. 05–80603.

2. The affiants were Timothy Snow, the registrar for the Kalamazoo County register of deeds office, and Tim Kosak, an employee of CCU. Mr. Kosak was also the witness in the deposition transcript. The record is completed by the February 9, 2004 mortgage granted by Debtor and his non-filing spouse to CCU and a title report prepared with respect to the property described in the February 9, 2004 mortgage.

same day it was granted. However, Mr. Kosak also states that the register of deeds office returned the mortgage by mail with a note that it had a question concerning the authenticity of Debtor's signature. Mr. Kosak's best recollection is that he received the returned mortgage sometime between Monday, February 16, 2004 and Friday, February 20, 2004.[3]

Mr. Kosak recalls responding to the register of deeds office's inquiry by immediately remailing the mortgage to the register of deeds office together with his own brief note. It does not appear that Mr. Kosak or anyone else made any alteration to the February 9, 2004 mortgage before it was mailed again.

Mr. Kosak's response was apparently satisfactory, for the register of deeds office thereafter processed the mortgage. The parties agree that the Kalamazoo register of deeds returned the processed mortgage sometime after March 8, 2004. Stamped on each page of the processed mortgage was a bar code, a filing number assigned by the register of deeds, and the date "3/8/04."

### OPINION

■ CCU concedes for purposes of its motion that Debtor's grant of the mortgage to it meets all of the Section 547(b) requirements of a preferential transfer.[4] However, CCU argues in its motion that Section 547(c)(3) precludes the Chapter 7 Trustee from avoiding the February 9, 2004 mortgage.

(c) The trustee may not avoid under this section a transfer—

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) **that is perfected on or before 20 days after the debtor receives possession of such property.**

11 U.S.C. § 547(c)(3) (Emphasis added).[5]

CCU contends that it perfected its mortgage from Debtor and his wife within the

**3.** Mr. Kosak's exact testimony was that he received the returned mortgage sometime during the week after he mailed it. February 9, 2004 was a Monday. Therefore, he could have received it as early as Monday, February 16, 2004 or as late as Friday, February 20, 2004.

**4.**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—

(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

**5.** 11 U.S.C. § 547(c)(3)(B) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to

20–day period provided by Section 547(c)(3)(B). However, CCU misinterprets this section. The 20–day "relation back" period for purposes of Section 547(c)(3) is measured from when the debtor acquired possession of the subject property, not from when the mortgage or security interest was granted. In the instant case, CCU itself concedes that Debtor and his wife acquired their home in December, 2003. Therefore, the Section 547(c)(3) defense is clearly not available to CCU.[6]

■ Interestingly, CCU did not assert Section 547(c)(3) as an affirmative defense when it answered the Chapter 7 Trustee's complaint. On the other hand, CCU did identify Section 547(c)(1) as an affirmative defense.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

\* \* \* \* \* \*

11 U.S.C. § 547(c)(1).

In many instances, a transfer is made for purposes of Section 547 when the transfer is "perfected." 11 U.S.C. § 547(e)(2)(B). However, if, for example, a mortgage lien is perfected within 10 days of when it became effective, then the date when the mortgage lien became effective is treated as the date of transfer. 11 U.S.C. § 547(e)(2)(A).[7] Consequently, a mortgage granted at the same time as a new loan will be treated as being "in fact" contemporaneous for purposes of Section 547(c)(1) if the mortgage lien is perfected within 10 days of its creation.

Therefore, the "relation back" issue raised by CCU in the context of its failed Section 547(c)(3) defense is also relevant with respect to CCU's separate Section 547(c)(1) defense. The question is whether CCU perfected its mortgage lien in Debtor's home within 10 days of its creation.[8]

Perfection is a defined term.

---

**6.** CCU erroneously cites *Bluegrass Ford–Mercury, Inc. v. Farmers National Bank of Cynthiana (In re Bluegrass Ford–Mercury, Inc.),* 942 F.2d 381 (6th Cir.1991) for the proposition that perfection of the challenged lien is measured from the date the lien is granted. Section 547(c)(3) at that time did measure the time of perfection from the date the defendant's lien "attaches." However, Congress amended Section 547(c)(3) in 1994. One of the changes was the replacement of lien attachment with debtor's date of possession as the reference point for measuring when the defendant had perfected its lien. Bankruptcy Reform Act of 1994, Pub.L. 103–394, 108 Stat. 1406, § 203 (1994).

increase the "relation back" period from 20 days to 30 days. However, the amendment does not apply in this instance because Debtor filed his bankruptcy petition before BAPCPA's October 17, 2005 effective date.

**7.** 11 U.S.C. § 547(e)(2)(A) was also amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to increase the "relation back" period from 10 days to 30 days. However, the amendment does not apply in this instance because Debtor filed his bankruptcy petition before BAPCPA's October 17, 2005 effective date.

**8.** Whether the Debtor and CCU intended the February 9, 2004 mortgage to be a contemporaneous exchange for new value is a question of fact that neither the Chapter 7 Trustee nor CCU have addressed. It is fair to assume from the parties' briefs that the Chapter 7 Trustee does not contest this element of the (c)(1) defense. However, if contemporaneous intent is contested, then the need to resolve that factual dispute would be one more reason for denying CCU's motion for summary judgment.

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

\* \* \* \* \* \*

11 U.S.C. § 547(e)(1)(A).

Michigan, like all states, utilizes a recording system to establish whether an interest holder in real property has "perfected" its interest in that same property. The register of deeds office of the appropriate county must accept and record all instruments evidencing a Michigan real estate transaction. The only condition is that the instrument submitted conform with certain statutory requirements. MICH. COMP. LAWS §§ 565.8 and 565.201. Once accepted, the register of deeds must certify upon each instrument "the time when it was received." MICH. COMP. LAWS § 565.27. If the instrument is a mortgage, the register of deeds must also enter information concerning the mortgage in an entry book for mortgages that the register of deeds is required to maintain. MICH. COMP. LAWS § 565.25. Specifically, the register of deeds is to enter into the mortgage entry book the names of the mortgagor and the mortgagee and the month, day and hour the mortgage was received. MICH. COMP. LAWS § 565.24. The register of deeds must also file a copy of the mortgage received in a separate set of books the register of deeds is required to maintain. MICH. COMP. LAWS § 565.26. These books are sometimes referred to as the record books. Once filed, the register of deeds must certify upon each page of the mortgage the liber (book) and page where the filed copy can be found. MICH. COMP. LAWS § 565.27. The register of deeds also adds to an alphabetical index the name of each party to the mortgage recorded. MICH. COMP. LAWS § 565.28. The register of deeds then returns to the appropriate party the certified original of the recorded mortgage.

Parties rely upon these records to determine the priority of their interests in real property relative to the competing interests of other parties.

Sec. 29. Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. . . .

MICH. COMP. LAWS § 565.29.

Statutes like MICH. COMP. LAWS § 565.29 are often referred to as "race-notice" statutes. Like a pure "notice" statute, a "race-notice" statute requires the subsequent purchaser to be ignorant of the competing interest in order to prevail. However, a "race-notice" statute also requires that the subsequent purchaser win the "race" with the competing interest holder to first record its interest with the register of deeds office. Consequently, a subsequent purchaser of real property in Michigan will prevail over a competing interest holder in the same property only if the purchaser is ignorant of the competing interest AND the purchaser is first to record its interest in the property.

Therefore, under Michigan law, CCU would have "perfected" its mortgage lien in the Debtor's home (i.e., CCU would have placed itself in a position whereby no subsequent purchaser could have acquired an interest in the home superior to its mortgage lien, 11 U.S.C. § 547(e)(1)(A))

when CCU recorded its mortgage with the Kalamazoo register of deeds office. CCU, of course, asserts that this event occurred no later than when the mortgage was resubmitted in February. However, the Chapter 7 Trustee contends that CCU's mortgage was not recorded within the meaning of MICH. COMP. LAWS § 565.29 until the register of deeds office actually filed the mortgage in its record book. *See* MICH. COMP. LAWS § 565.26. In this instance, the "record book" date appears to be March 8, 2004, which is well beyond the 10–day cutoff required for the February 9, 2004 mortgage to be treated as in fact contemporaneous for purposes of Section 547(c)(1)(B).

The recording statutes themselves do not support the Chapter 7 Trustee's contention. Subsection (4) of MICH. COMP. LAWS § 565.25(4) states:

> (4) The instrument shall be considered as recorded at the time so noted and shall be notice to all persons except the recorded landowner subject to subsection (2), of the liens, rights, and interests acquired by or involved in the proceedings. All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests.

MICH. COMP. LAWS § 565.25(4).

There is absolutely no question that the time referenced in this subsection is the time of the instrument's receipt, for the register of deeds is required by statute to enter into the entry books the date of receipt with respect to each instrument accepted for entry. MICH. COMP. LAWS § 565.24. There is no similar requirement with respect to the record books. Consequently, the reference to "the time so noted" in MICH. COMP. LAWS § 565.25(4) can only mean the entry book. Indeed, whatever lingering doubt there may be as to the correctness of this interpretation is eliminated by the fact that subsection (1) of this same section refers to the register of deeds' entry books, not the register of deeds separate record books.[9] MICH. COMP. LAWS § 565.25(1).

The Chapter 7 Trustee actually concedes that the recording date for purposes of determining when the alleged preferential transfer occurred should be the date of receipt as entered in the appropriate entry book of the Kalamazoo County register of deeds office. However, the Chapter 7 Trustee argues that MICH. COMP. LAWS § 565.25(4) is irrelevant because the Kalamazoo County register of deeds office does not maintain entry books as required by the statute. As support, the Chapter 7 Trustee offers the uncontested affidavit of Timothy Snow, Kalamazoo County's clerk register. That affidavit states that "[o]ur [the Kalamazoo County register of deeds] office does not keep records of the date of receipt of documents delivered to our office for recording." Indeed, the Chapter 7 Trustee maintains that very few register of deeds offices in Michigan comply with MICH. COMP. LAWS § 565.25. *See also, Central Ceiling & Partition, Inc. v. Dept. of Commerce,* 249 Mich.App. 438, 642 N.W.2d 397 (2002).

**9.** MICH. COMP. LAWS § 565.25(4) is ambiguous because the phrase "[t]he instrument shall be considered as recorded at the time so noted ..." could mean that the instrument is deemed recorded when the appropriate entry is made in the entry book or when it was previously received as noted on the instrument itself. MICH. COMP. LAWS § 565.27. I am inclined to resolve the ambiguity in favor of the latter interpretation because the register of deeds is to record the date of receipt, not the date of entry, in the entry book. MICH. COMP. LAWS § 565.24. However, the ambiguity is in any event immaterial if one assumes that a register of deeds office records the information concerning conforming instruments in its entry book in the same order as they were received.

CCU and the Chapter 7 Trustee both have spent a considerable amount of time arguing the merits of *Central Ceiling.* *Central Ceiling* involved the Wayne County register of deeds office. Like its Kalamazoo counterpart, the Wayne County register of deeds office did not keep entry books. Moreover, the apparent backlog of filings in that office resulted in substantial delays between the time an instrument was received by that office and the time the filed instrument actually appeared in that office's record books.

The appellees in *Central Ceiling* were all subcontractors with claims against the Homeowners Construction Lien Recovery Fund. Recovery from that fund required these contractors to have valid construction liens against the building project. The subcontractors had filed their notices of lien with the Wayne County register of deeds office within the 90–day period required by the Michigan Construction Lien Act. MICH. COMP. LAWS §§ 570.1101, *et seq.* However, the register of deeds office did not actually enter any of the notices of lien received until well after the 90–day deadline had passed.

The Michigan Department of Commerce, as the administrator of the fund, argued that the subcontractors' liens were invalid because "Wayne County failed to formally 'record' the liens by assigning them a liber and page number until some time later, after the ninety-day period had passed." *Central Ceiling,* 249 Mich.App. at 440–41, 642 N.W.2d 397. The Michigan Court of Appeals rejected the Department of Commerce's argument on the basis that the subcontractors had substantially complied with the Construction Lien Act. *Id.* at 445, 642 N.W.2d 397. However, the Michigan Supreme Court thereafter rejected the lower court's rationale and instead held simply that "the liens presented

to the Wayne County register of deeds were timely recorded." *Central Ceiling & Partition, Inc. v. Dept. of Commerce,* 470 Mich. at 877, 683 N.W.2d 142 (2004).

CCU relies upon the Michigan Supreme Court's conclusion in *Central Ceiling* to argue that receipt of an instrument by the register of deeds office is all that is required for the instrument to be treated as "recorded" for purposes of determining priority between a transferee of a conveyance and a subsequent purchaser under MICH. COMP. LAWS § 565.29. The Chapter 7 Trustee responds by arguing that *Central Ceiling* should be read only in the context of whether the lien claimants had enforceable liens under the provisions of the Michigan Construction Lien Act.

I agree with the Chapter 7 Trustee. *Central Ceiling* should be accorded little precedential value given the Michigan Supreme Court's qualification that its decision was based upon "the limited facts of this case" and given the Michigan Supreme Court's election not to explain why it reached the conclusion that it did. *Id.*

However, CCU need not rely upon *Central Ceiling* to establish the position it advocates, for its position is well supported by Michigan's recording statutes themselves. What the Chapter 7 Trustee overlooks is the "race" aspect of those statutes. He is correct that a subsequent purchaser of the Debtor's home would not have lost his "bona fide" status with respect to CCU's February 9, 2004 mortgage until the Kalamazoo County register of deeds office finally indexed that instrument on, as the Chapter 7 Trustee claims, March 15, 2004. In other words, a subsequent purchaser could not have had constructive notice of CCU's mortgage at any time earlier than that date given the Kalamazoo County register of deeds' failure to maintain

entry books.[10] However, as already explained, lack of notice is only one requirement that a subsequent purchaser of real estate must meet in Michigan in order to void another conveyance of the same property. The subsequent purchaser is also required to have recorded its conveyance first. MICH. COMP. LAWS § 565.29. In other words, a subsequent purchaser, no matter how oblivious, must also win the "race" to the appropriate register of deeds office in order to prevail over another claimant to the same property.

In the instant case, the race between CCU and any subsequent purchaser ended when the Kalamazoo County register of deeds office accepted CCU's February 9, 2004 mortgage for filing. A subsequent purchaser could not have done anything more to prevail after that event. Granted, the Kalamazoo County register of deeds office has chosen for whatever reason to ignore its duty to time-stamp instruments as they are accepted and to maintain entry books to record those times. However, absent an affidavit to the contrary, it is fair to infer that the Kalamazoo County register of deeds office at least records the instruments in the same order as they are

accepted. Consequently, it was impossible for any subsequent purchaser of Debtor's home to "get ahead" of CCU's February 9, 2004 mortgage once the Kalamazoo County register of deeds office had accepted CCU's mortgage for recording.

The failure of the register of deeds office to maintain entry books does not mean, as the Chapter 7 Trustee contends, that the race can no longer be measured or that the race is otherwise to be delayed to some date well after the instrument was actually accepted for recording. Rather, it means only that reference must be made elsewhere to ascertain the pertinent time and date of receipt. Indeed, had the Kalamazoo County register of deeds been performing one of its other duties, that being the notation of the time of receipt on the instrument itself, MICH. COMP. LAWS § 527.27, no further inquiry would have been necessary. Unfortunately, this duty was neglected as well. Therefore, the time when the Kalamazoo County register of deeds office accepted CCU's February 9, 2004 mortgage for recording remains a question of fact that must be resolved as part of this adversary proceeding.[11] The

10. If Kalamazoo County register of deeds office had kept entry books, the receipt of CCU's mortgage would have been on public record as soon as the register of deeds had recorded that information in those books. MICH. COMP. LAWS §§ 565.24 and 565.25.

11. The Chapter 7 Trustee hints in his argument that his status as a hypothetical bona fide purchaser under Section 544(a)(3) should give him an edge with respect to CCU's relative rights vis-a-vis the bona fide purchaser referenced in Section 547(e)(1)(A). However, a bankruptcy trustee is deemed to have this hypothetical status only as of the date of the debtor's petition.

In this instance, the petition date was April 21, 2004, which was well after the March 15, 2004 date the Chapter 7 Trustee himself sets as the date when CCU's February 9, 2004 mortgage was recorded. Moreover, Section

547(e)(1)(A) makes no reference to the bankruptcy trustee's hypothetical status as a bona fide purchaser. Rather, it simply identifies the date necessary for determining "relation-back" under Section 547(e)(2)(A) as being the same date as would be used under Michigan law to determine when a transferee such as CCU would have conclusively prevailed over a subsequent purchaser for value. That date, under Michigan law, is the date the instrument in question was accepted for recording by the register of deeds office. Determination of that date requires no assessment of whether a real or hypothetical purchaser existed before, on, or after that date.

Indeed, if Debtor had filed his Chapter 7 petition before CCU's February 9, 2004 mortgage had been accepted for filing, the Chapter 7 Trustee would not have attempted to set aside CCU's mortgage as a preferential transfer. Rather, the Chapter 7 Trustee would

Chapter 7 Trustee argues that innocent purchasers will be unfairly hurt if accepted but unrecorded liens are given precedence over their own claims to the property.

If Michigan's recording system is to work properly, a member of the public must be able to appear at the office of any register of deeds and perform an accurate title search that will give him or her the full, complete and timely status of title to the real property in which he or she is interested. The systems, utterly fail if there is a "gap period" in which the register of deeds has received documents for recordation, but because there is no entry book no one can learn of their existence. This would be an examiner's worst nightmare, in which the interested party may be charged with constructive notice, but despite using his or her best efforts, cannot learn of the document's existence.

Trustee's January 25, 2005 Supplemental Brief, p. 11 (Docket Entry No. 31).

However, the inequity the Chapter 7 Trustee identifies is an inequity that is inherent in all "race-notice" recording schemes. It is impossible for a register of deeds office to instantaneously acknowledge in its entry books when an instrument was received for recording. Consequently, there is always the risk that some innocent purchaser will acquire property during the inevitable gap between the date when an instrument is received and the actual publication of that date in the register of deeds' entry books.

A race-notice recording act operates against a subsequent bona fide purchaser who fails to record first as follows: *A* conveys to *B*. A[sic] conveys the same land to *C*, who purchases for value and without notice of *B*'s unrecorded interest. *B* then records before *C* and thus takes priority over *C* under the race-notice recording act. This situation has arisen a number of times in other states with race-notice statutes, and the courts have held that the prior interest, recorded after a subsequent good-faith purchaser purchases a conflicting interest but before the second purchaser records, is prior to the subsequent interest. *E.g., Hastings v. Wise,* 91 Mont. 430, 8 P.2d 636 (1932); *Omaha Loan & Building Association v. Turk,* 146 Neb. 859, 21 N.W.2d 865 (1946); *Ames v. Miller,* 65 Neb. 847, 91 N.W. 250 (1902); *Blair State Bank v. Stewart,* 57 Neb. 58, 77 N.W. 370 (1898); *Mansfield v. Gregory,* 8 Neb. 432, 1 N.W. 382 (1879); *Fleschner v. Sumpter,* 12 Or. 161, 6 P. 506 (1885); *Butler v. Bank of Mazeppa,* 94 Wis. 351, 68 N.W. 998 (1896); *Fallass v. Pierce,* 30 Wis. 443 (1872).

The rationale for requiring a person purchasing land for value and without notice of a prior unrecorded interest to record first to establish priority was set forth by the Michigan Supreme Court in *Crouse,* 130 Mich. at 358, 90 N.W. at 36 (quoting 20 Am & Eng Enc L 593 (1892))[.]

\* \* \* \* \* \*

And although race-notice statutes at times create seemingly unfair results, Michigan courts have recognized that they are bound by the language of the statute and that the policy of the recording act is to be determined by the legislature.

\* \* \* \* \* \*

See *Michigan Fire & Marine Insurance Co. v. Hamilton,* 284 Mich. 417, 419, 279

---

have asserted his rights as a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3) and claimed that he, rather than CCU, had won the race under MICH. COMP. LAWS § 565.29. *See also,* 11 U.S.C. § 550(a).

N.W. 884, 885 (1938) ("Those laws (registry) point out specifically the danger to which the party failing to record his title is exposed, and the courts cannot extend or add to it.") (quoting *Smith v. Williams,* 44 Mich. 240, 244, 6 N.W. 662 (1880)).

John G. Cameron, Jr., Michigan Real Property Law: Principles and Commentary § 11.18 (2d ed.1993). (Quotations omitted.)

The inherent unfairness to innocent purchasers of Michigan's race-notice recording statute is unquestionably exacerbated when books of entry are not maintained. However, I am satisfied that the Michigan Supreme Court would not take the extraordinary step of eliminating the "race" requirement from MICH. COMP. LAWS § 565.29 so as to protect an innocent purchaser under such circumstances. It is important to remember that CCU is also an innocent participant in this play. While *Central Ceiling* may not be on point, it does express the Michigan Supreme Court's sentiment that persons like CCU who have relied upon the law to protect themselves should not then be punished because the government itself has failed to follow the very same law. The remedy must come from within. Indeed, the Michigan Supreme Court's decision in *Central Ceiling* was accompanied by an order that directed the Wayne County register of deeds "to send the Clerk of this Court quarterly written reports on its progress toward bringing its recording system into compliance with the requirements of MCL 565.24 and 565.25." *Central Ceiling,* 470 Mich. at 878, 683 N.W.2d 142.

Moreover, the bleak world the Chapter 7 Trustee foresees is exaggerated. Tomorrow's prudent buyer will close his purchase in escrow just like yesterday's prudent buyer. Granted, it may take longer to clear escrow in Kalamazoo County than perhaps in other counties because of the considerable time it takes for a filed instrument to finally appear in the public records for that county. However, the delay is an inconvenience that the citizens of Kalamazoo county must endure until the apparent deficiencies in its register of deeds office can be corrected.

### *CONCLUSION*

■ The reference point for determining the 10–day "relation-back" period for purposes of Section 547(e)(2)(A) is the date the Kalamazoo County register of deeds office accepted CCU's February 9, 2004 mortgage for recording. However, a material question of fact remains as to the exact date of that event. The pivotal date in this instance is February 19, 2004. If the Kalamazoo County register of deeds office accepted CCU's mortgage for filing on or before that date, then CCU's lien in Debtor's home will be treated as a contemporaneous exchange for value within the meaning of Section 547(c)(1). On the other hand, if the Kalamazoo County register of deeds office accepted CCU's mortgage for filing after February 19, 2004, then it appears that the Chapter 7 Trustee will prevail in his effort to avoid CCU's lien in the Debtor's home.

■ Unfortunately, Mr. Kosak is uncertain whether he resubmitted the February 9, 2004 mortgage with enough time to have met the February 19, 2004 deadline and neither party has offered any other facts to address this issue. Therefore, this matter must proceed with respect to at least this factual issue. Establishing the date of acceptance arises in the context of Section 547(c)(1), which is an affirmative defense. *See, e.g. Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.),* 861 F.2d 1555, 1559 (11th Cir.1988). Consequently, CCU has the burden to prove that the Kalamazoo County register

of deeds office did in fact accept the February 9, 2004 mortgage on or before February 19, 2004.

CCU has also suggested that the Kalamazoo County register of deeds office improperly returned the February 9, 2004 mortgage and that the February 9, 2004 mortgage should be deemed to have been accepted when CCU first submitted it within a day or two of February 9, 2004. This argument raises questions of both law and fact that also may need to be addressed as this matter proceeds.

Therefore, CCU's motion for summary judgment is DENIED. I will issue a separate order consistent with this opinion.

Both parties have filed written pretrial statements pursuant to my October 3, 2004 Rule 7026 order. I will therefore also prepare a separate pretrial order which will set a date for trial and which will address other remaining pretrial matters.